455 SEVENTH AVENUE, INC., Appellant, *v.* FREDERICK HUSSEY REALTY CORP., Respondent.

Argued November 19, 1945; decided January 25, 1946.

*Leon Lauterstein, Melbourne Bergerman, Florence Morgenstern* and *Lincoln Lauterstein* for appellant. I. The Appellate Division erred in reversing the trial court's decision that the lease and modification agreement, apart from any extrinsic evidence, showed that the parties intended the minimum rent for the first renewal term to be the rent reserved in the lease for its original term, and in holding that such minimum rent should be the rent reserved in the lease for the last year of the original term plus the additional sum payable under the modification agreement for that year. II. The lease of January 7, 1924, makes the rent reserved in that lease for its original term, ending February 1, 1945, the minimum rent for the first renewal term. (*Atterbury* v. *Bank of Washington Heights,* 241 N. Y. 231; *Board of Education* v. *American Nat. Bank,* 294 F. 14; *Utley* v. *Donaldson,* 94 U. S. 29.) III. The modification agreement did not enlarge the minimum rental for the first renewal term beyond the amount of rent reserved in the lease for its original term. (*Ayer* v. *Bonwit,* 161 App. Div. 122; *Foreman* v. *Elaine Realty Corp.,* 240 App. Div. 490; *Feldman* v. *Sheridan Warehouse Co-operative Corp.,* 247 App. Div. 82.) IV. Article First of the modification agreement did not increase the rent reserved in the lease by the amount of the " additional rent "; but on the contrary shows that the " additional rent ", although payable simultaneously, was intended to be separate and distinct from the rent reserved in the lease and to be payable only

during the balance of the original term of the lease. V. The general scheme of the modification agreement does not support the holding of the majority of the Appellate Division that the " additional rent " was incorporated in the rent reserved in the lease. VI. The modification agreement did not make the " additional yearly rents " payable after the expiration of the original term of the lease or through the first renewal period. VII. The lease provided, and the modification agreement emphasized, that the original term of the lease, and not the last year of the original term, was the " period " for measuring the minimum rent for the first renewal term. (*Atterbury* v. *Bank of Washington Heights,* 241 N. Y. 231.) VIII. The Appellate Division erred in reversing the trial court's findings that the intent of the parties, as shown by the background of the modification agreement and the circumstances attending its negotiation and execution, was that such agreement should not enlarge the minimum rent for the first renewal term beyond the rent reserved in the lease for its original term, and in substituting for those findings a new finding that such extrinsic evidence indicated an intention that the minimum rent for the renewal term was to be $200,000 per year. IX. The Appellate Division erred in holding that the parol evidence rule made the extrinsic evidence inadmissible. (*Rasmussen* v. *New York Life Ins. Co.,* 267 N. Y. 129; *Becker* v. *Frasse & Co.,* 255 N. Y. 10; *Utica City Nat. Bank* v. *Gunn,* 222 N. Y. 204; *Atterbury* v. *Bank of Washington Heights,* 241 N. Y. 231; *Nottingham & Wrenn Co.* v. *American Coal Exporting Co.,* 36 F. 2d 982; *Lamb* v. *Norcross Brothers Co.,* 208 N. Y. 427; *O'Neil Supply Co.* v. *Petroleum H. & P. Co.,* 280 N. Y. 50.) X. The Appellate Division erred in reversing the trial court's findings, which were fully supported by the extrinsic evidence, and in making a new and contrary finding which was against the weight of such evidence.

*Monroe E. Stein* for respondent. I. The lease and the modification agreement read together express the intention of the parties that the net minimum rent for the first renewal term was to be the rental set forth in the modification agreement for the period ending February 1, 1945, to wit, $200,000 per year. (*Fleischman* v. *Furgueson,* 223 N. Y. 235; *Paige* v. *Faure,* 229 N. Y. 114; *McKibben* v. *Lester,* 9 Ohio St. 627; *Brickhouse* v. *Hill,* 167 Ark. 513.) II. There being no ambiguity in the

modification agreement or the lease, the parol evidence offered did not explain or did not attempt to explain any ambiguity in the said instruments but was an attempt only to substitute an alleged oral agreement of the parties for the written agreement and hence was inadmissible. (*Hutchison* v. *Ross,* 262 N. Y. 381; *Schweinburg* v. *Altman,* 145 App. Div. 377; *Kirchner* v. *N. H. S. M. Co.,* 135 N. Y. 182; *McManus* v. *Biddison,* 152 Misc. 239, 242 App. Div. 623; *Smith* v. *McCullaugh,* 234 App. Div. 490.) III. If the court holds that extrinsic evidence was properly admitted, the said extrinsic evidence indicates an intention of the parties that the substituted annual rental as set forth in the modification agreement for the period ending February 1, 1945, was to be the standing of the minimum annual net rental for the first renewal term.

Dye, J. On January 7, 1924, the plaintiff-appellant as tenant, and the defendant-respondent as landlord, entered into a lease covering certain premises on Seventh Avenue between 34th and 35th Streets, New York City, for a term of twenty-one years beginning February 1, 1924, and ending February 1, 1945, reserving an annual rental of $100,000 for the first year and $150,000 for each of the remaining years, to be paid quarterly, in advance. By the terms of the lease there were provided two possible renewal terms of twenty-one years each at the option of the lessee. The lease also provided for the erection by the tenant of a sixteen-story building according to agreed plans and specifications which, when erected, was not to be removed or substantially altered without the consent of the landlord who was deemed the owner of the building upon its completion.

The lease provision containing the tenant's option to renew provided: " * * * if there shall be standing or be in the course of erection, on the demised premises at the end of this lease, a building or buildings, which the Tenant shall have erected on the demised premises in pursuance of the terms of this lease, and if the Tenant * * * desires to avail itself of a renewal of this lease, beginning February 1, 1945 * * * the Landlord * * * will grant * * * a renewal of this lease for the further term of twenty-one years from February 1, 1945 at such annual rent payable quarterly in advance (but not less than the rent herein reserved), as shall be agreed upon by the said Landlord and Tenant ".

The method of agreement was to be by appraisal of the land demised "without taking into consideration the value of the building or buildings, at its full and fair market value or price at private sale, considering the same as unencumbered and unrestricted vacant plot and six percent upon the amount of appraisement or valuation of said land shall be the annual rent of the demised premises in addition to all other payments herein provided to be made for the further term of twenty-one years * * * in no event is said rental to be fixed at a less sum than herein provided to be paid as the rental for the period ending February 1, 1945.''

In 1930 the tenant decided to demolish the sixteen-story building and replace it with a twenty-story building more suitable to the needs of the occupant, the R. H. Macy Co. The parties accordingly entered into a written modification agreement providing for annual rental payments for the balance of the original term, which were to be paid in addition to the net annual rental of $150,000 reserved in the lease, amounting to $10,000 for the first year, $20,000 for each of the succeeding four years, $35,000 for each of the succeeding five years, $40,000 for each of the succeeding three years and $50,000 for each of the remaining two years, so that the aggregate yearly net rental for the years 1943–1945 would be $200,000. The agreement also provided that the additional yearly rents were to be paid in equal quarterly yearly payments as provided for the rent reserved in the original lease. There then follows the disputed phrase: '' with the same force and effect as if said yearly additional rent and said yearly original rent were the yearly rents originally reserved in the said lease.''

Upon the trial extrinsic evidence by the attorney who had acted for the defendant at the time the original lease and modification agreement were negotiated and drawn was offered and received over objection of the defendant. The plaintiff-appellant was also allowed to show that the attorney representing it during the modification negotiation was dead. Upon this foundation, letters exchanged during the course of the negotiation were received. While the lower court took the position that the extrinsic evidence was unnecessary to a decision, it, nevertheless, made findings of fact derived therefrom.

The lease stands as the basic contract of the parties which the modification agreement provides '' shall be and remain in

full force and effect, excepting as modified by this agreement.'' Both documents are carefully drawn in clear and understandable language but most significant and convincing are the explanatory marginal notes appearing opposite the various paragraphs therein, except the disputed phrase as quoted above. The words of the renewal clause are not unusual, but are clear enough to be readily understandable by the ordinary person. There is no necessity for extrinsic evidence as the dispute centers around the legal effect of the words rather than any inherent ambiguity in their use. There are no words indicating an intention to increase the base rent. All modified rental amounts were described as '' additional yearly rent ''. Had the parties so desired, they could easily have stated in so many words that the additional rental in the modification agreement was to be deemed the rent reserved in the original lease for purposes of renewal.

The law is well settled that changes in a lease are not to be presumed or implied; and no additional liability will be imposed upon a tenant unless it is clearly within the provisions of the instrument under which it is claimed. If the instrument contains any ambiguity it must be resolved against the landlord and in favor of the tenant (1 N. Y. Law of Landlord and Tenant [Thompson & Co.] 601; Bennett, Landlord and Tenant, 56; *Ayer* v. *Bonwit*, 161 App. Div. 122, 126; *Feldman* v. *Sheridan Warehouse Cooperative Corp.*, 247 App. Div. 82, 84; *Pangburn* v. *Stanley Mark Strand Corp.*, 24 N. Y. S. 2d 97, 99).

Since the question of rent was of major importance to both parties, and the modification agreement did not specifically change the basic formula for determining the renewal rental, that rental should be $150,000 for each year of the renewal term or the result of an appraisal and 6% of the land value thereon. The parties have already stipulated that an appraisal would be useless as 6% of the land value at the present time would not equal the rental formula contained in the original lease.

The judgments should be reversed and the case remitted to the Special Term for further proceedings not inconsistent with this opinion, with costs to appellant in this court and in the Appellate Division. [See 295 N. Y. 827.]

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, THACHER and MEDALIE, JJ., concur.

Judgments reversed, etc.