RALEIGH ASSOCIATES, INC., Appellant and Respondent, *v.* RYDER HENRY II, as Administrator with the Will Annexed of EMILY S. JACKSON, Deceased, Respondent and Appellant.

Argued March 1, 1951; decided May 24, 1951.

*Samuel Gottlieb, Howard D. Pack, Joseph P. Segal* and *Walter P. Arenwald* for plaintiff, appellant and respondent. I. The written modification agreement of July 9, 1942, satisfied the requirements of the Statute of Frauds and is not rendered unenforcible thereby. (*Roberts* v. *Fulmer,* 301 N. Y. 277; *Newburger* v. *American Sur. Co.,* 242 N. Y. 134; *Barkin Constr. Co.* v. *Goodman,* 221 N. Y. 156; *Karnal* v. *Horovitz,* 187 Misc. 851, 272 App. Div. 796.) II. The modification agreement affected the rent for the renewal term, because it specifically changed the basic rental in the lease for determining renewal. Any doubt with respect to the legal effect of the language employed therein must be resolved in favor of· tenant. Extrinsic evidence as to intent was inadmissible and rightfully excluded. There is no issue of overreaching nor any factual or legal basis for such claim. (*455 Seventh Ave., Inc.,* v. *Hussey Realty Corp.,* 295 N. Y. 166.) III. Plaintiff specifically sought to renew the lease *as modified.* There was no possible basis for the Special Term holding that plaintiff is now bound by a renewal of the lease at the *original* rental. Such adjudication penalized plaintiff for having sought a timely determination of its renewal rights through this action for declaratory judgment and was justifiably reversed at the Appellate Division. (*151–163 West 26th St., Inc.,* v. *Mary Brosnan, Inc.,* 183 Misc. 804.) IV. An exercise of an option which by its specific terms is an offer to renew a lease as modified cannot be accepted so as to bind the offeror to a renewal of that lease without modification. (*Gram* v. *Mutual Life Ins. Co. of N. Y.,* 300 N. Y. 375.)

*Chester Bordeau* and *Robert F. Little* for defendant, respondent and appellant. I. The renewal terms of the lease are unaffected by the modification agreement of July 9, 1942. (*455 Seventh Ave., Inc.,* v. *Hussey Realty Corp.,* 295 N. Y. 166; *Tanenbaum* v. *Levy,* 83 App. Div. 319, 178 N. Y. 594.) II. Plaintiff's renewal notice of July 3, 1946, served to create a renewal lease in accordance with the renewal provisions of the original lease. (*Heller* v. *Pope,* 250 N. Y. 132; *Orr* v. *Doubleday, Page & Co.,* 223 N. Y. 334.) III. If the lease has not been renewed defendant may at his option treat plaintiff as a trespasser or as a common-law holdover at an annual net rental of $25,000 per year. (*Schuyler* v. *Smith,* 51 N. Y. 309; *Giordano* v. *Loperfide,* 203 App. Div. 164; *Austin* v. *Stevens,* 38 Hun 41; *Scully* v. *Roche,* 76 Misc. 458; *Stern* v. *Equitable Trust Co.,* 238 N. Y. 267; *United Merchants' Realty & Improvement Co.* v. *Roth,* 193 N. Y. 570.) IV. The modification agreement of July 9, 1942, is void under the Statute of Frauds. (*McKenzie* v. *Harrison,* 120 N. Y. 260; *Meyers* v. *Knights of Pythias Bronx Temple Assn.,* 194 App. Div. 405; *Imperator Realty Co.* v. *Tull,* 228 N. Y. 447; *Bailey* v. *Ogden,* 3 Johns. 399; *Mentz* v. *Newwitter,* 122 N. Y. 491; *Ward* v. *Hasbrouck,* 169 N. Y. 407; *Irvmor Corp.* v. *Rodewald,* 253 N. Y. 472; *Basma* v. *Weekes,* 66 Times L. R. 1047; *Lerand Corp.* v. *Meltzer,* 267 N. Y. 343.)

FULD, J. This action was brought by plaintiff-tenant to obtain a judgment (1) declaring its right to exercise an option to renew a lease for a further term of twenty-one years and (2) fixing its total annual rental upon such renewal at $12,000, with no obligation to pay real estate taxes or other charges.

In 1927, Henry Gluck as tenant and Emily Jackson as landlord entered into a twenty-one-year lease for the land and building at 556 Madison Avenue, New York City. The lease prescribed a fixed annual rental of $25,000, the tenant being required to pay, as " additional rents ", all taxes, assessments and other charges on the property. The lease gave the tenant, if not in any default, an option to renew for two further twenty-one-year terms. If the tenant exercised the option, the parties were to execute a new lease containing substantially similar terms " except as to the regular net annual rental which is hereinafter provided for ".

As to such rental, the lease recited that, if the parties should not agree upon the amount, within ten months before the expiration of the current term, then, " the net annual rent to be provided in the said renewal leases shall be six (6) per centum per annum on the value of said land," such value to be fixed by arbitration. Next followed a clause, focal upon this appeal, to the effect that in no event was the " net annual rent " for the renewal term to be less than " the net annual rent reserved for the last year of the then current term." In all cases, the lease continued, the tenant under the renewal lease was to pay taxes, assessments and other charges upon the property.

In 1928, Gluck assigned the original lease to Kops Building, Inc., a family corporation of which Gluck — who remained personally liable on the lease — was president and virtually sole stockholder. The rent provisions of the lease gave way in 1942 to a superseding agreement in writing which incorporated a rental arrangement under which the parties had been informally operating for many years. Executed while the original lease still had some six years to run, that agreement not only eliminated the tenant's obligation to pay taxes and other charges for the duration of the original term, but reduced the fixed rental. Specifically, as to the latter item, it altered the " provisions for the payment of fixed annual rent contained " in the original lease " so as to provide * * * rent at the rate of $12,000.00 per year during the said term *instead of* $25,000.00 per year, effective as of July 1, 1942." The agreement — signed by the party to be charged, in this instance, the landlord, and adequately describing and identifying both parties to the agreement, a landlord and a tenant — satisfied the requirements of the Statute of Frauds and effectively reduced the rent reserved under it. (See, e.g., *Irvmor Corp.* v. *Rodewald*, 253 N. Y. 472, 475; cf. *Lerand Corp.* v. *Meltzer*, 267 N. Y. 343, 346; Real Property Law, § 279, subd. 1.)

By virtue of an assignment for which it paid upwards of $22,000, plaintiff became tenant of the premises in February of 1946, more than two years before the expiration of the original term. For fully five months after the assignment, from February to August, 1946, plaintiff paid the landlord each month at the rate of an annual gross rental of $12,000,

and the landlord accepted each payment "without reservation."

Meanwhile, in July of 1946, plaintiff notified the landlord that it elected to exercise the option to renew the lease, "as modified" by the 1942 agreement, for the renewal term of twenty-one years. Thereafter, in a letter dated September 9, 1946, more than four years after execution of the modifying agreement, the landlord informed plaintiff that the agreement was "ineffective"; that the rent had never validly been reduced from $25,000 a year plus taxes; that plaintiff owed over $200,000 in rent and tax arrears and that "In view of the defaults mentioned above and the terms of the lease," plaintiff's election to renew the lease was "of no effect."

Arbitration proceedings, stipulated to be without prejudice, were then held to determine the value of the land, as a step in computing the possible renewal rent in accordance with the formula specified in the lease. Arbitrators placed the value of the land at $200,000. Accordingly, the rent for the renewal term — 6% of that figure — amounted to $12,000 a year, unless "the net annual rent reserved for the last year of the then current term" should exceed that figure, in which event the renewal lease was to provide for payment of the higher rental.

The modification agreement having validly and effectively reduced the rental for the duration of the original term and that rental having been paid in full, the tenant was privileged to exercise the option to renew and the landlord could not demur thereto or avoid the consequences of that election. Consequently, the prime question before us is whether the net annual rental to be paid upon renewal is the $25,000 specified in the original lease or the amount of $12,000, representing 6% of the land value.

In resolving that question, we concern ourselves with what the parties intended, but only to the extent that they evidenced what they intended by what they wrote (see, e.g., *Brainard* v. *New York Central R. R. Co.*, 242 N. Y. 125, 133; *455 Seventh Ave.* v. *Hussey Realty Corp.*, 295 N. Y. 166, 172), and this is what they wrote: upon the tenant's exercising the option to renew the lease for a further twenty-one-year term, the renewal rental to be paid each year was either (a) a rental agreed upon in writing or (b) 6% of the value of the land as fixed by arbitration — unless the latter amount should fall below the "net

annual rental reserved for the last year of the then current term.'' In addition, the renewal lease was to obligate the tenant — and the requirement was not affected by any term of the modification agreement — to pay all taxes and other charges on the property.

The parties failed to agree upon the amount to be paid, as the first alternative contemplated. Therefore, argues the landlord, the rent upon renewal becomes the rental actually set forth and provided in the original lease for the last year of the term. If that were indeed what the parties intended, the language which they chose concealed most successfully that thought. The amount of rent reserved for the last year of the term at the time when the original lease was written was $25,000 a year, a fact, of course, well known to the parties. If they had purposed to do what the landlord now claims, several methods were at hand to express that design. They would have provided in the original lease that the net annual rental would be '' at least $25,000 '' upon the first renewal or they would have specified — as in the *Hussey* case (*supra,* 295 N. Y. 166), upon which the landlord heavily relies — that the renewal rent would in no event be fixed at a less sum than '' herein provided '' to be paid or they would have signified in the modification agreement itself that the reduced rental was not to be used in measuring or determining the minimum rent for the renewal term. In short, if the parties had desired the $25,000 figure to continue as the minimum renewal rental in the face of any modification of the rent for the last year of the term, if they had intended the rent reserved for such last year not to control the renewal rent, they could very easily, by the use of two or three words, have so provided. As a matter of fact, not only did they not so provide, but they actually and explicitly agreed in the modification agreement that '' Except as herein specifically provided, the aforementioned [original] lease shall remain in full force and effect.''

To eschew a path so plain indicates a design to travel a different route, and to a different destination. As we read the operative renewal provision of the original lease, the rental reserved for the last year could be no figure other than $12,000. In so many words, the modification agreement declares that the '' rent '' was to be at the rate of $12,000 a year during the said

term " *instead of* " $25,000 a year. By that substitution, the base rent was converted to the lesser figure. It follows inexorably that, when the renewal option came to be exercised, there was to be carried forward into the new term a sum not less than the substituted rental base of $12,000, since that amount was unquestionably the fixed " annual rent reserved for the last year of the then current term." To find otherwise would necessitate our saying that, although $12,000 was in fact the annual rent reserved for the key year, it was, for some reason not apparent from the contract between the parties, to be disregarded and nullified. That we may not do.

In our opinion, the language of the modification agreement admits of no doubt as to what the parties intended. They revised the base rent under the original lease and that revised base rent traveled into the renewal lease in accordance with the formula prescribed when the tenant unequivocally declared its intention to renew the lease " as modified ".

A useful contrast — illustrating a case where the base rental was *not* thus effectively modified for renewal purposes — is *455 Seventh Ave.* v. *Hussey Realty Corp.* (*supra,* 295 N. Y. 166), to which we have before adverted. There, the original lease carefully specified that " in no event " was the renewal rent " to be fixed at a less sum than *herein provided to be paid* as the rental for the [lease] period ending February 1, 1945 ", and the modification agreement left unaltered that basic " rental ". It merely prescribed the payment of an extra sum, expressly denominated " additional rent ". Specifically noting that " There are no words [in the modification agreement] indicating an intention to increase the base rent. All modified rental amounts were described as ' additional yearly rent ' ", this court held that the engraftment of " additional " rent did not — for purposes of arriving at the base rent for the renewal term — increase or affect the amount of " the rental " " *herein provided to be paid* " for the specified lease period (295 N. Y., pp. 171, 172). Here, on the other hand, as already noted, the base rent was effectively modified. The modification agreement before us actually used the phrase " instead of " in connection with the old and new rents; the recital that the " rent " was to be at the rate of $12,000 a year — including the last year of the term — " instead of " $25,000 a year plainly demonstrates

that the parties fixed an entirely new rent, a rent that completely superseded the old.

The intention of the parties, as reflected in the language used to express such intention, as well as the scheme of the lease, clearly emerges. Both parties were intent that the landlord receive as rent an amount that would assure her a 6% return on the land — an almost new building at a cost of $70,000 having been erected by the tenant — and, accordingly, they provided that, unless some other figure was agreed upon or unless the rent reserved for the last year of the term was greater, the net annual rent was to be 6% of the value of the land. In short, since the lease agreement is unambiguous, parol evidence as to what might have been in the mind of one party or the other as to the amount of the renewal rent, was neither necessary nor justified. (See, e.g., *Fogelson* v. *Rackfay Constr. Co.*, 300 N. Y. 334, 338–339; *455 Seventh Ave.* v. *Hussey Realty Corp.*, *supra*, 295 N. Y. 166, 172; *Brainard* v. *New York Central R. R. Co.*, *supra*, 242 N. Y. 125, 133; *Metzger* v. *Aetna Ins. Co.*, 227 N. Y. 411, 415–417.) " There is no necessity ", the court declared in the *Hussey* case (*supra*, 295 N. Y. 166, 172), " for extrinsic evidence as the dispute centers around the legal effect of the words rather than any inherent ambiguity in their use." Nor do we experience any difficulty with the fact that the modification agreement relieved the tenant of its obligation to pay taxes and other charges for the balance of the first term. The lease provisions that the renewal rent was to be at least as much as " the net annual rent " for the last year of the term and that " in all cases " the tenant was to " pay all of the additional rents [i.e., taxes] as provided in this lease ", merely made it plain that, regardless of who might be paying the taxes at the end of the current rental period, the tenant was under the necessity of paying them during the renewal term.

It is our conclusion, therefore, that plaintiff validly exercised its option to renew the lease for a further period of twenty-one years at a fixed annual rent of $12,000, plus taxes and other charges on the property.

The judgment of the Appellate Division should be modified to the extent of directing entry of a judgment (1) declaring that plaintiff validly exercised the option to renew contained in the lease of April 5, 1927, and (2) ordering that the parties execute

a new lease for a twenty-one-year period beginning May 1, 1948, at a fixed rental of $12,000 a year, plus the additional rents provided for in the said 1927 lease, and, as so modified, affirmed, without costs.

FROESSEL, J. (dissenting). The controversy in this case arises between a landlord and her tenant and revolves around their rights under a twenty-one-year lease and its renewal provisions. The original lease was made on April 5, 1927; the fixed annual rent reserved was $25,000; " additional rents " were also provided for. The tenant was given an ·option to renew for two further twenty-one-year periods, the options to be exercised at least one year prior ·to the expiration of each term. If the parties did not agree upon the renewal rent, arbitration was provided, with the proviso, however, " that in any event the net annual rent for each renewal term shall be at least as much as the *net annual rent reserved* for the last year of the then current term." (Emphasis supplied.) That rent as fixed was $25,000 and, as we read the lease, that sum is what the quoted language means on this first renewal. Such language was obviously employed instead of the specific amount by reason of the fact that the original lease envisioned two renewal terms, and it was contemplated that the net annual rent reserved during the first renewal period might well differ from that under the original term.

Because the parties in 1942 modified the original lease " so as to provide the rent at the rate of $12,000.00 per year during the said term instead of $25,000.00 per year ", it is said that the annual rent for the first renewal period should be $12,000. We do not so interpret the writings, and conclude that " the net annual rent reserved for the last year " of the original term refers to the basic rent under the original lease and not to the rent stated in the modification agreement. We agree with Special Term that plaintiff had unconditionally renewed the lease and that it was required to pay the annual rent of $25,000 for the renewal period " plus the additional rental specified in the lease ". The Appellate Division likewise agreed " that the option to renew was at $25,000 a year ", but adopted the view that the " option was not exercised." (277 App. Div. 978, 979.)

The modification agreement here merely fixed the annual rent

for a limited period of time, namely, " during the said term " (the twenty-one-year term would expire in six years), and not for the renewal period. It expressly provided: " Except as herein specifically provided, the aforementioned lease shall remain in full force and effect." It is of course true that we search a writing to discover the intention which the parties have formulated in the written language, but that is not to exclude the circumstances surrounding its execution or the setting in which it was made (*Wirth & Hamid Fair Booking* v. *Wirth*, 265 N. Y. 214, 219; *Utica City Nat. Bank* v. *Gunn*, 222 N. Y. 204, 207).

The landlord here had voluntarily substantially reduced the rent of this tenant during the period of the depression and since 1932. In 1942 the tenant sought a written modification for the balance of the term. It should be noted that said modification was not drawn by the landlord's attorney but by counsel for the tenant; at the time, the landlord was an old lady eighty years of age. It is utterly unreasonable to assume that after a landlord has voluntarily consented to a substantial reduction of rent over a period of years, to which the tenant was in nowise legally entitled, it may be said that she intended such reduction to be effective for a first renewal period of twenty-one years and for a probable second renewal covering a like period — forty-two years in all — and thus deprive herself of hundreds of thousands of dollars. Certainly, in the absence of language unambiguously and specifically so providing, we should not impute to the contracting parties a purpose so extraordinary and inequitable.

In *455 Seventh Ave.* v. *Hussey Realty Corp.* (295 N. Y. 166) we were faced with a somewhat similar situation except that an increased rent liability was sought to be imposed upon a tenant. We there pointed out (pp. 171–172):

" The lease stands as the basic contract of the parties which the modification agreement provides ' shall be and remain in full force and effect, excepting as modified by this agreement.' * * * Had the parties so desired, they could easily have stated in so many words that the additional rental in the modification agreement was to be deemed the rent reserved in the original lease for purposes of renewal. * * *

" Since the question of rent was of major importance to both parties, and the modification agreement did not specifically

change the basic formula for determining the renewal rental, that rental should be $150,000 [the amount reserved in the *original* lease, not in the modification.] "

Because that construction there happened to favor the tenant, we may not now change the rule if it favors the landlord. Whether the modification prescribes an additional or a lesser rent does not, in our view, alter the situation. That case is clearly applicable to the present situation. The tenant here was not obligated to exercise this option; it could have freed itself of all obligations if it had chosen to do so.

The judgment of the Appellate Division should be reversed and that of Special Term affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS and CONWAY, JJ., concur with FULD, J.; FROESSEL, J., dissents in opinion in which DESMOND and DYE, JJ., concur.

Judgment accordingly. [See 302 N. Y. 940.]