ISADORE E. BLACK et al., Doing Business as MARYTA REALTY Co., Appellants and Respondents, *v.* GENERAL WIPER SUPPLY Co., INC., et al., Respondents and Appellants.

Argued March 5, 1953; decided June 4, 1953.

*Isidore Minkin* for appellants-respondents. I. Tenants' failure to pay the sewer rent was a default under the lease. (*New York Univ.* v. *American Book Co.,* 197 N. Y. 294; *Miller* v. *Wilke,* 158 App. Div. 208; *Dunbar* v. *City of New York,* 177 App. Div. 647; *Rankin* v. *City of New York,* 145 App. Div. 838; *Carson* v. *Brockton Sewerage Comm.,* 182 U. S. 398; *Mayor & City Council of Baltimore* v. *Williams,* 61 F. 2d 374; *Robertson* v. *Zimmermann,* 268 N. Y. 52; *L. X. Corp.* v. *City of New York,* 201 Misc. 400.) II. There was no warranty in the lease that the premises were free of conditions which might be considered defects by the New York Board of Fire Underwriters; the lease was not ambiguous in this respect. (*Heller* v. *Pope,* 250 N. Y. 132; *Zimmermann* v. *Loft,* 125 App. Div. 725.)

*Victor Konow* for respondents-appellants. I. Under the facts and circumstances presented herein the lease must be construed most favorably to tenants. (*455 Seventh Ave., Inc.,* v. *Hussey Realty Corp.,* 295 N. Y. 166; *Matter of Smith,* 194 Misc. 718, 275 App. Div. 956.) II. Since the lease contains no provision for the imposition upon tenants of a sewer rent or charge and since by virtue of section 82d9–9.1 of the Administrative Code of the City of New York the sewer rent or charge is imposed directly upon the owner of the property connected with the city sewer system for the maintenance of the system which directly benefits the property of the owner, there is no liability upon the part of tenants therefor as additional rent under the lease. (*Meltzer* v. *Koenigsberg,* 302 N. Y. 523; *People* v. *Friedman,* 302 N. Y. 75; *Matter of Russo* v. *Valentine,* 294 N. Y. 338; *Matter of Rathscheck,* 300 N. Y. 346; *Matter of Tishman* v. *Sprague,* 293 N. Y. 42; *People ex rel. Knott Corp.* v. *Graves,* 286 N. Y. 377; *McCluskey* v. *Cromwell,* 11 N. Y. 593; *Security Bldg. & Loan Assn.* v. *Carey,* 259 App. Div. 42; *New York Univ.* v. *American Book Co.,* 197 N. Y. 294.) III. Landlords were guilty of a gross fraud, not only in exaggerating the amount of the claim for the repairs

allegedly made by them, but also in fraudulently causing the violations to be cancelled without compliance therewith in order that tenants be charged therefor. Furthermore, paragraph 4 of the lease is ambiguous and parol testimony was properly admitted to indicate the intentions of the parties with respect to liability for the electrical defects. (*People* v. *Evans*, 40 N. Y. 1; *Eighth Ave. Coach Corp.* v. *City of New York*, 286 N. Y. 84; *Becker* v. *Frasse & Co.*, 255 N. Y. 10; *Malbone Garage* v. *Minkin*, 272 App. Div. 109, 297 N. Y. 677; *Mullen* v. *Washburn*, 224 N. Y. 413; *Greenpoint Sugar Co.* v. *Whitin*, 69 N. Y. 328; *Reynolds* v. *Commerce Fire Ins. Co. of N. Y.*, 47 N. Y. 597.)

FULD, J. In this summary proceeding, an order has been entered awarding the landlord possession of the rented premises as well as a money judgment for $685, representing the cost of certain electrical repairs. Both parties have appealed, by permission of the Appellate Division, to us — the tenants, from the order dispossessing them and directing a judgment for $685; the landlord, from so much of the order as denied recovery for sewer rents, levied against the premises and paid by the landlord. Resolution of the controversy turns upon the construction of a lease covering a two-story brick building in Queens County, New York City, rented in 1948 for use as an industrial and commercial laundry.

As to the tenants' appeal, little need be said. In the first place, there is no basis *in fact* for the charge that the landlord acted fraudulently or in bad faith in requesting from the tenants a larger sum for the repairs than the amount to which he was entitled. And, in the second place, there is no warrant *in law* for the tenants' attempt to vary the clear and unambiguous terms of the lease by reliance upon an asserted oral agreement, made before the lease was executed, that the landlord was to be responsible for electrical defects existing when the tenants took possession. (See *Raleigh Associates* v. *Henry*, 302 N. Y. 467, 476; see, also, *Fogelson* v. *Rackfay Constr. Co.*, 300 N. Y. 334, 338–339; *455 Seventh Ave.* v. *Hussey Realty Corp.*, 295 N. Y. 166, 172.)

However, the question posed by the landlord's appeal — whether, absent provision in the lease, tenants are liable for sewer rents — is novel and calls for extended treatment.

Sewer rents were first imposed by the City of New York in June of 1950, about a year and a half after the lease was executed. It was enacted, by local law, that "the owner of * * * real property connected with the sewer system * * * shall pay a sewer rent or charge for the use of the sewer system. Such rent or charge shall be based on the water supplied to any such real property * * * [and] shall be equal in amount to one-third of the charges for water supplied to such property" from the municipal water system. (Local Laws, 1950, No. 67 of City of New York; Administrative Code of City of New York, § 82d9–9.1.) Soon thereafter, on November 27 and December 29, 1950, the city, pursuant to that enactment, rendered bills for sewer rent totaling $149.50. Upon the tenants' refusal to meet those charges, the landlord paid them and sought their recovery in this proceeding.

The burden of sewer rents rests, of course, where the parties intended. And, since this lease is silent on the subject, we may infer the parties' design only from the nature of the charges themselves and from the over-all scheme of obligation reflected in their agreement.

We begin with the rule, now firmly fixed, that no charges shall be imposed upon a tenant in addition to those specified in the lease. "The law is well settled", this court recently wrote, "that changes in a lease are not to be presumed or implied; and no additional liability will be imposed upon a tenant unless it is clearly within the provisions of the instrument under which it is claimed. If the instrument contains any ambiguity it must be resolved against the landlord and in favor of the tenant." (455 Seventh Ave. v. Hussey Realty Corp., supra, 295 N. Y. 166, 172.) Here, the landlord, who drew the lease, specified that the tenants were to "pay * * * all water rents and water taxes * * * charged against * * * the demised premises", but, in contrast, said nothing of possible sewer rents. This, of itself, goes far toward establishing the parties' purpose that any other charges levied against the property be borne by the landlord.

That omission becomes even more telling in view of the fact that, when the lease was executed in 1948, it was common knowledge that, since the year 1929, every city in this state had been

empowered by express legislative provision to impose sewer rents based upon water use or " upon any other equitable basis " (General City Law, § 20, subd. 26). Indeed, here in this state, sewer rents had been levied for years in the city of Buffalo (see *Robertson* v. *Zimmermann*, 268 N. Y. 52, 62; L. 1935, ch. 349, § 13) and, in other states throughout the country, comparable levies had been imposed by a number of cities — in Pennsylvania, in Massachusetts and New Hampshire, in Alabama, Kentucky and Virginia and in Arkansas and Oklahoma. (See *Carson* v. *Brockton Sewerage Comm.*, 182 U. S. 398; *City of Leeds* v. *Avram*, 244 Ala. 427; *Freeman* v. *Jones*, 189 Ark. 815; *Louisville & Jefferson Co. Met. Sewer Dist.* v. *Seagram & Sons*, 307 Ky. 413; *Opinion of the Justices*, 93 N. H. 478; *Sharp* v. *Hall*, 198 Okla. 678; *Gericke* v. *Philadelphia*, 353 Pa. 60; *Board of Supervisors* v. *City of Richmond*, 162 Va. 14.) It cannot be said, therefore, that these charges were of a character so foreign and improbable as to be beyond the contemplation of the parties. Under these circumstances, the failure to mention sewer rents, when contrasted with the specification that the tenants were to bear the water charges, compels our conclusion that they were to be absolved from responsibility for the sewer levies.

We have little hesitation in reaching this conclusion, since it does not result in imposing on the landlord an entirely new burden. The parties knew both that their agreement covered a building connected with the city sewer and that property owners bore the principal cost of maintaining and improving that system. The expense of maintaining and repairing the sewers was then included in the city's budget and, since city revenues come in large part from property taxes,[1] this meant that owners of real estate contributed the main share of servicing costs. (See Minority Report in Opposition to Council Bill Int. No. 236 — which, when enacted, became Local Law No. 67 — Covering Imposition and Collection of Sewer Rents, The City Record [June 15, 1950], vol. LXXVIII, pt. VI, pp. 4183–

---

1. For the period July 1, 1949, to May 31, 1950, for example, roughly half of the city's cash receipts came from real estate taxes. (See Statement by the Office of the Comptroller of the City of New York Summarizing the City's Cash Receipts and Disbursements, The City Record [June 15, 1950], vol. LXXVIII, pt. VI, pp. 4178–4179.)

4184.) The burden of sewer improvements, in like fashion, was completely borne by property owners in the form of special assessments based on the value of their property. (See Minutes of the Board of Estimate and Apportionment, Oct. 16, 1936, p. 4152; also Minutes of Nov. 13, 1936, p. 4769, April 23, 1937, p. 2018, Nov. 19, 1937, p. 6248. See, also, Local Laws, 1950, No. 68, and Local Laws, 1951, No. 96, of City of New York; Administrative Code, §§ B41-95.5, B41-95.51.)

Unquestionably aware that owners of realty generally paid for sewer upkeep and improvement, the parties entered into this lease without providing that any part of this burden should fall upon the tenants. Quite obviously, such an omission suggests that the landlord was to bear the responsibility for all property taxes and special assessments levied to maintain and improve the sewer system. None would challenge that, since " the lease contained no provision with reference to the payment of taxes that might be imposed upon the property  *  *  *, the burden of their payment remained on the landlord." (*New York University* v. *American Book Co.,* 197 N. Y. 294, 296-297; see, also, *Spoor-Lasher Co.* v. *Newburgh Gas & Oil Co.,* 269 N. Y. 447, affg. 245 App. Div. 329; *People ex rel. International Navigation Co.* v. *Barker,* 153 N. Y. 98, 101; 1 Rasch, Landlord and Tenant and Summary Proceedings [1950], p. 288.) By not providing otherwise, the parties, we may conclude, manifested their purpose that the landlord, not the tenants, should pay for the maintenance and betterment of the disposal system. And neither that design of the parties nor the burden of the obligations assumed was in any way altered by the fact that, some eighteen months after their lease was executed, the city changed the basis for handling the cost of maintaining and improving its sewers. Instead of continuing to finance sewer upkeep largely from property taxes and paying for improvements with special assessments, the municipality adopted this charge or rent to maintain and improve the sewage disposal system.

Whatever may have been the underlying motivation for the new law (see, e.g., Minority Report in Opposition to Council Bill Int. No. 236, *op. cit.,* The City Record [June 15, 1950], Vol. LXXVIII, pt. VI, p. 4183), it is manifest that it was not

prompted by any intent to change the existing obligations of landlord and tenant. Indeed, the very language of the enactment — " the *owner* of any parcel of real property connected with the sewer system  *  *  *  shall pay a sewer rent " — tends to negate any purpose to shift liability from the property owner.[2] Be that as it may, it seems clear that the sewer charges pay for the same services that were previously financed by local benefit assessments and, in large part, by property taxes — services that the parties intended the landlord to provide. In point of fact, soon after the sewer rent law was enacted, many assessments for sewer improvements — already authorized — were actually cancelled, since the " cost and expenses of each of the improvements  *  *  *  shall be financed by sewer rents ". (See, e.g., Administrative Code, § B41–95.5, subd. c; § B41–95.51, subd. b.)

Our decision in *New York University* v. *American Book Co.* (*supra,* 197 N. Y. 294), requires no different result. In that case, water charges, measured by a meter, were held to be payable by the tenant of the building rather than by the landlord. There, the provision was in force when the lease was signed and, in contrast to the sewer enactment, recited that it was the " *consumers* of water [who] should pay for the water  *  *  *  received and used " and that the bills for such water charges should be made out " to each and every *consumer* " (L. 1882, ch. 410, § 352, later adopted in Greater New York Charter [L. 1897, ch. 378, as amd. by L. 1901, ch. 466] as § 475). It was only reasonable, therefore, that the burden of the water charge fall upon the consumer, the tenant, unless the lease provided otherwise. The sewer rent,

2. This statutory language, however, cannot be taken as a conclusive determination, by the city, of liability for sewer charges as between owner and user. Perhaps, as the landlord suggests, the provision making the owner responsible was inserted to support the lien on his property. (See Administrative Code, § 415[1]–19.0, as amd. by Local Laws, 1950, No. 67 of City of New York.) However, in this connection, it should be noted that language specifically placing the burden of water rents or charges upon the owner is not present in the Administrative Code and yet unpaid water charges are made a lien on the property. (See Administrative Code, § 415[1]–7.0.) Consequently, we have ample indication that the language referred to in the sewer rent law was not needed to provide basis for a lien on the property and that it was probably designed to cast liability for sewer charges upon the owner and landlord.

however, was first imposed after the lease had been executed and, as already observed, that levy pays for the very same services that, under the lease, were to be paid for by the landlord. In the case before us, the purpose to be served by the sewer rent, the function to be performed by its imposition, indicate that it should be borne by the landlord.

We recognize, of course, that the costs of sewer construction and maintenance will now be apportioned largely on the basis of water consumption and, should the tenants' laundry prove unusually successful, the landlord may well be faced with a larger charge than he would otherwise have been required to bear. On the other hand, as a result of the imposition of the sewer rent, existing special assessments for sewers previously constructed were cancelled (*supra*, p. 393), and the landlord was thereby relieved of a burden which had existed prior to enactment of the sewer rent law. It may be that, if the parties were to contract today, they might agree on some scheme for apportioning the sewer charges between them, based upon these or other considerations. We may not, however, make a new bargain for them. Our function is limited to construction of the agreement that the parties actually made, and, as we have shown, it is more consonant with the tenor of their lease to apply the general rule that obligations not imposed on tenants by the agreement should not be placed upon them by the court.

Since, then, the tenants may not be charged with, or held liable for, sewer rents, it is not necessary to consider their further point that, in any event, the landlord may not assert his claim for such rents in a summary proceeding.

The Appellate Division was correct, therefore, in its disposition of each claim, and its order should be affirmed, without costs.

LEWIS, CONWAY, DESMOND, DYE and FROESSEL, JJ., concur; LOUGHRAN, Ch. J., deceased.

Order affirmed.