■ J. N. A. REALTY CORP., Appellant, v CROSS BAY CHELSEA, INC., et al., Respondents.—In a holdover proceeding, the petitioner landlord appeals (by permission) from an order of the Appellate Term of the Supreme Court for the Second and Eleventh Judicial Districts, dated July 2, 1975, which affirmed a judgment of the Civil Court of the City of New York, Queens County, dated November 19, 1974, which, after a trial, dismissed the petition. Order of the Appellate Term and judgment of the Civil Court, reversed, on the law and the facts, with costs in this court, $30 costs and disbursements in the Appellate Term, and with costs in the Civil Court, and petition granted. In December, 1963, J. N. A. Realty Corp. (JNA), the petitioner landlord, entered into a written lease with one of the respondent tenant's predecessors with respect to a commercial building in Howard Beach, Queens, New York. The lease consists of a printed form and a 12-page rider. The term and rental provisions on the first page of the printed form were deleted and reference was made to the attached rider, the terms of which became a part of the lease. The first page of the rider stated that the term of the lease was for a period of 10 years, commencing January 1, 1964. Paragraph 58 of the rider states, in relevant part: *"Option to Renew* * * * the Tenant shall have a right to renew this lease for a further period of Ten (10) years from the expiration of the original term hereof upon the same terms, covenants and conditions as herein contained * * * provided * * * that Tenant shall notify the Landlord in writing by registered or certified mail Six (6) months prior to the last day of the term of this lease that Tenant desires such renewal." A "modification and extension of lease" was executed on March 16, 1968, pursuant to a meeting held with representatives of JNA, the respondent tenant's predecessor, and the respondent tenant, Cross Bay Chelsea, Inc. (Chelsea). The pertinent terms of this

modification were as follows: "That the provisions of Paragraph #58 of said lease are changed so that the Tenant shall have a right to renew this lease for a further period of Twenty-four (24) years, instead of Ten (10) years, from the expiration of the original term of said lease, provided said Tenant or its successors or assigns shall keep, observe and perform all of the terms, provisions, covenants and conditions of said Lease on its part to be kept, observed and performed, upon the same terms, conditions and covenants of said Lease, except as herein modified. * * * All other provisions of Paragraph #58 in said lease, and all provisions for additional rent contained in said lease shall remain in full force and effect, except as hereinabove modified." Chelsea assumed the tenancy on June 8, 1969. The time to renew the lease had expired as of July 1, 1973; JNA notified Chelsea of this fact by letter dated November 12, 1973. A letter dated November 16, 1973, on the legal stationery of Chelsea's attorney (but signed by the attorney's secretary), was sent to JNA stating that Chelsea exercised its option to renew the lease "for an additional term of twenty-four (24) years as of January 1, 1974." There is ample evidence in the record to prove that Chelsea had knowledge—or is chargeable with notice—of all the provisions of paragraph 58 of the rider to the lease. At the outset, the lease clearly refers to the attached rider, reading, in part, "upon the terms and conditions and for the term in the rider attached hereto and made a part of this lease." Chelsea's principals had entered into a purchase agreement with the predecessor tenants, dated March 16, 1968, which included the following provision: "6. The Seller shall procure the execution by the major landlord of the modification of the lease, as submitted to the Seller by the Buyer, prior to closing title." Chelsea's representatives were present at the closing on June 8, 1968 when the lease was modified and extended, however, Chelsea failed to exercise its option to renew within the six-month period in accordance with paragraph 58 of the rider to the lease. When a lease provides for a condition precedent in order to obtain a renewal, our courts have generally held that the failure to satisfy that provision will result in a forfeiture of the right to renew (see *People's Bank of City of N. Y. v Mitchell,* 73 NY 406; *Raleigh Assoc v Henry,* 277 App Div 978, mod 302 NY 467; *Fidelity & Columbia Trust Co. v Levin,* 128 Misc 838, affd 221 App Div 786, affd 248 NY 551). This is based upon the rationale that where a lessee is given a right to renew a lease pursuant to prior notification, the tenant has no estate in the future period until the satisfaction of the condition precedent. Failure to give the required notice does not therefore result in a forfeiture of any interest. Equity, which abhors a forfeiture, will not intervene unless there is a showing of accident, ambiguity, fraud, surprise, mistake or some other equitable ground (see *Fidelity & Columbia Trust Co. v Levin, supra; Sy Jack Realty Co. v Pergament Syosset Corp.,* 34 AD2d 819, affd 27 NY2d 449; *Jones v Gianferante,* 201 Misc 69, revd 280 App Div 856, affd 305 NY 135; *Rizzo v Morrison Motors,* 29 AD2d 912; *Matter of Topp,* 81 NYS2d 344; *Ringelheim v Karsch,* 112 NYS2d 130). In the absence of such grounds, equity will not relieve a tenant's negligent failure to fulfill a condition precedent *(Swan Prods. Co. v 130-30 Bldg. Corp.,* 35 AD2d 789). In the case at bar there was an inexcusable failure or omission to exercise the option to renew. We find no equitable grounds to grant relief. Neither ambiguity, mistake, accident, fraud nor surprise has been demonstrated. It was error for the trial court to hold that the landlord's failure to show prejudice, without more, permitted relief. In *Sy Jack Realty Co. v Pergament Syosset Corp.* (27 NY2d 449, 453, *supra),* the most recent Court of Appeals case on the matter, the tenant's renewal notice was lost in the mail. The court felt

that it was important to note that the difficulty in which the tenant found itself was not due to any willful or deliberate act or omission on its part, and deemed these circumstances an "excusable fault." This, tempered with a sense of justice and fairness, supported the decision that the tenant timely exercised his option to renew. Justice and fairness should not intervene when there has been an inexcusable failure or omission to exercise an option to renew. To allow otherwise would render similar provisions meaningless and ineffectual. In addition it should be noted that even to this day the tenant has never legally bound itself to exercise the option, since the only purported exercise was through the medium of a letter not signed by any authorized officer of the petitioner, or even by its attorney, but by the latter's secretary. Hopkins, Acting P. J., Rabin, Shapiro and Hawkins, JJ., concur; Margett, J., dissents and votes to hold the appeal in abeyance and to remand the proceeding to the trial court for a hearing in accordance with the following memorandum: On December 17, 1963 the petitioner landlord, J. N. A. Realty Corp. (JNA) entered into a written lease with Victor Palermo and Sylvestor Vascellaro, as tenants, with respect to a commercial building located in Queens, New York. The lease consists of a printed form and a 12-page rider. On the first page of the rider the period of the lease is stated as "ten (10) years to commence on the 1st day of January, 1964". Paragraph 58 of the rider states that the tenant has the right to renew the lease for a further period of 10 years, provided the tenant notifies the landlord, 6 months prior to the last day of the term of the lease, that he desires such renewal. On February 28, 1964 Palermo and Vascellaro assigned the lease to Foro Romano, Inc. (Foro), a corporation organized by the two men. Some years later Foro closed the restaurant and placed a "for sale" advertisement in a newspaper in an attempt to sell the restaurant business and its leasehold interest. As a result of the advertisement the principals of Foro and Peter and John Morfogen entered into discussions. The Morfogens made it clear that they would be interested in the leasehold only if they could obtain a 30-year lease. On March 16, 1968 JNA and Foro entered into a written "modification and extension of lease", which provided that the provisions of paragraph 58 of the rider were changed so that the tenant had the right to renew the lease for a period of 24 years, instead of the 10 years, dating from the expiration of the original lease. The six-month renewal notice requirement was not changed. Consequently, Peter and John Morfogen, acting through respondent Cross Bay Chelsea, Inc. (Chelsea) agreed to purchase the restaurant business and leasehold interest from Foro for $155,000. By letter dated November 12, 1973 JNA notified Chelsea that its time to renew the lease had expired and that it assumed that Chelsea would vacate the premises as of January 1, 1974. Almost immediately thereafter, Chelsea, by its attorney, informed JNA that it was exercising its option to renew the lease. In March, 1974 JNA instituted this holdover proceeding to recover possession of the property. It was JNA's contention that the lease had expired on December 31, 1973 inasmuch as Chelsea had not timely exercised its option to renew the lease. The trial court, applying "equitable principles", rejected this view and held that the lease was "extended and renewed for a further period of 24 years from January 1, 1974". The Appellate Term unanimously affirmed the judgment of the Civil Court. Case law indicates that a tenant may be excused from its failure to timely exercise its option to renew a lease if the default was due to an honest mistake or similar excusable default and if no harm or prejudice to the landlord resulted from the default in giving notice *(Sy Jack Realty Co. v Pergament Syosset Corp.,* 27 NY2d 449; *Jones v Gianferante,* 305 NY 135).

Other factors, such as substantial improvements to the premises made by the tenant at some cost to him, and resultant substantial loss to the tenant if he is required to vacate the premises, are also worthy of judicial consideration. Significantly, in the instant case, the trial court impliedly found that since Chelsea never had the rider in its possession it had no knowledge of the provision therein requiring it to give notice to the landlord that it wished to continue the lease for an additional 24 years. The record therefore supports the conclusion that Chelsea's failure to timely renew its lease was the result of an honest mistake. Furthermore, the record reveals that the trial court and the Appellate Term were entirely correct in holding that the equities are almost completely with Chelsea. Chelsea made a substantial investment in the premises. It paid a total of $155,000 for the leasehold and a restaurant business which had been closed for a number of months. In addition, alterations to the premises cost Chelsea in excess of $15,000. Although JNA's chief officer, Mr. Arena, knew of the renewal requirement, he chose not to mention it when he· wrote to Chelsea on June 13, 1973 notifying it of taxes due shortly before June 30, 1973, the date by which the option to renew the lease was required to be exercised. Moreover, although Mr. Arena was often present at the premises during the summer of 1973, while further alterations were being made, he again said nothing about Chelsea's failure to exercise its option. Mr. Arena's course of conduct was designed to lull the tenant into a belief that it had obtained a long-term interest in the property. Thus, when John Morfogen told Arena in June, 1973 that he was interested in buying the entire building, Arena told him that "you have a 30-year lease, there is nothing to be concerned about". I am troubled by the trial court's refusal to permit Mr. Arena to testify as to any prejudice JNA may have sustained as a result of Chelsea's failure to timely exercise its option to renew. Such evidence is relevant to an equitable determination of all of the issues raised at bar. Accordingly, this appeal should be held in abeyance and the matter remanded to the trial court for a hearing limited to that issue.