C. Andrew RUSSELL, Samuel S. Zacharias and T. Bob Investments, Inc., Plaintiffs,

v.

ENERGY EXCHANGE CORPORATION; Warren Haught; Barry Haught; Haught Energy Corporation; Warren Associates, Inc.; Haught, Inc.; Glenn L. Haught and Sons; W & K Oil Company; VH Joint Venture and Donaldson, Lufkin & Jenrette Securities Corporation, Defendants.

Civ. A. No. 84–A129.

United States District Court, S.D. West Virginia, Parkersburg Division.

Oct. 21, 1986.

Robert J. Cindrich, Louis J. Krzemien, Jr., Mansmann, Cindrich & Huber, Pittsburgh, Pa., Frederick D. Fahrenz, Preiser & Wilson, Charleston, W. Va., for plaintiffs.

George Wailand and Leslie Kazon, Cahill, Gordon & Reindel, New York City, Gale R. Lea and Thomas N. McJunkin, Jackson, Kelly, Holt & O'Farrell, Charleston, W.Va., for defendant Donaldson, Lufkin & Jenrette Securities.

John T. Schell, III and Barry Goldman, Hansell & Post, Washington, D.C., Ira M. Haught, Harrisville, W.Va., for Haught defendants.

Larry J. Gonzales and David A. Mohler, Love, Wise & Woodroe, Charleston, W.Va., for Energy Exchange.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending before the Court are motions to dismiss filed by Donaldson, Lufkin & Jenrette Securities Corporation (DLJ) and the Haught Defendants. By an earlier Order the Court converted the motions to ones for summary judgment pursuant to the authority of *Rule* 12(b)(6). The Court will address DLJ's motion now and defer for later consideration the motion of the Haught Defendants.

DLJ has moved for summary judgment as to every count of the Plaintiff's complaint in which it is named. The Court will consider each of the Plaintiffs' theories in turn.

## A. *Breach of Contract.*

In Count One of the complaint, Plaintiff T. Bob Investments, Inc. (T. Bob) alleges that it undertook representation of the Haught interests and entered into a "Soliciting Dealer Agreement" with Crown Financial, an agent of Energy Exchange. Pursuant to the agreement, T. Bob was to be paid a fee by Energy Exchange of $.40 per exchanged share. Crown Financial apparently assigned their interest in this agreement to DLJ. Crown Financial, in a letter to T. Bob, stated that "[t]he solicitor dealer-agreements previously executed with Crown Financial Corporation have been assigned to DLJ for purposes of the exchange *only* on the condition that they will be honored as written and executed." It is this agreement upon which T. Bob bases its contractual claim.

DLJ argues that the controlling agreement is not the one relied upon above by T. Bob, but, rather, is the June 16, 1982, Soliciting Dealer Agreement between T. Bob and DLJ. DLJ asserts that this latter agreement superseded the earlier agreement between T. Bob and Crown Financial. T. Bob does not deny that it entered into the second agreement; however, it does dispute DLJ's assertion that that agreement controls.

T. Bob claims that a look at the surrounding circumstances at the time the June 16, 1982, agreement was entered into shows that that agreement was not intended to supersede the earlier agreement between T. Bob and Crown Financial (DLJ assuming the responsibilities of Crown Financial). It cites a letter dated June 22, 1982, in which T. Bob states: "The mutual understanding as Mr. Michael of your firm (DLJ) expressed to me today that the agreement has nothing to do with our agreements and understandings with Warren Haught (who is neither a party nor a beneficiary of the solicitor-dealer agreement)." The letter also contained the related statement: "We want you to be aware that we have not renounced our rights under our understandings with Warren Haught." From language of this nature, T. Bob attempts to persuade the Court that the intent of the parties was to change the benefits and obligations with respect to future solicitation for the exchange offer and not with respect to Warren Haught's involvement. Countering, DLJ directs the Court's attention to passages in the June 16 agreement. In particular, DLJ relies on the following exerpt from the agreement between T. Bob and itself:

"This Agreement supersedes any prior agreements, written or oral, which you may have entered into to act as Soliciting Dealer with respect to the Exchange Offer, or any understandings which you may have had with respect to the Exchange Offer, and contains all agreements with respect to your participation as Soliciting Dealer in the Exchange Offer. You hereby waive any claims which you may have against any broker-dealers and the Company and agree that all prior agreements which you may have entered into with respect to the Exchange Offer shall be considered null and void with no force or effect."

DLJ argues that the above excerpt is clear in meaning. Hence, it contends that absent ambiguity an examination of "surrounding circumstances" is unnecessary and improper. The Court agrees.

T. Bob argues that a court in construing a contract may consider the circumstances of the parties at the time of the negotiation and making of the contract. *See Hong Kong Export Credit Insurance Corp. v. Dun and Bradstreet,* 414 F.Supp. 153 (S.D. N.Y.1975); *Brubard Co. v. U.S. Postal Service,* 404 F.Supp. 691 (E.D.N.Y.1975), *affirmed,* 538 F.2d 308 (2d Cir.1976), *cert. denied,* 429 U.S. 834, 97 S.Ct. 99, 50 L.Ed.2d 99 (1976). Although this proposition may be correct, it cannot be used to make a wholesale change in the unambiguous written word. As the New York [1]

---

1. The parties agree that pursuant to its terms the June 22, 1982, agreement is to be interpreted under New York law.

court noted in *Raleigh Associates, Inc. v. Henry,* 302 N.Y. 467, 473, 99 N.E.2d 289, 291 (1951), "we concern ourselves with what the parties intended, but only to the extent that they evidenced what they intended by what they wrote." The Court is convinced that the intent of the parties can be easily gleaned from the four corners of the June 16, 1982, agreement.

The Court, however, agrees with the Defendant that if the Court were to accept T. Bob's invitation to look at the "surrounding circumstances," the result would not be different. T. Bob relies on the letter of June 22, 1982, to support a strained interpretation of the June 16, 1982, agreement. An associate of T. Bob stated in the letter that the June 16 agreement did not affect their "agreements ... with Warren Haught." Elsewhere in the letter was the following comment: "We want you to be aware that we have not renounced our rights under our understandings with Warren Haught." This language in no way contradicts the position that the June 16, 1982, agreement superseded all prior agreements between T. Bob and DLJ. DLJ was not a party to any agreement between T. Bob and Warren Haught. DLJ came into the picture under an assignment of the contract between T. Bob and Crown Financial.

The June 22, 1982, letter closes with the following language:

"In conclusion, we have signed and are returning the Soliciting Dealer Agreement to you based on our understanding that none of the terms of our September 1, 1981, agreement with Warren Haught

is affected. It is our intention that Warren Haught pay the differential between the compensation payable to us in that letter and the compensation payable to us in the Soliciting Dealer Agreement."

This passage clearly indicates that T. Bob's agreement with Warren Haught and its agreement with DLJ are separate and apart from one another. This self-evident conclusion, however, does not preclude the finding that the contractual relations between DLJ and T. Bob are governed by the June 16, 1982, agreement. They *are* so governed.[2]

Having established that the June 16, 1982, agreement is controlling, the Court now considers DLJ's contention that T. Bob has no claim under that contract.

DLJ submits two arguments for why T. Bob's claim for breach of contract must fail.[3] First, it argues that the Soliciting Dealer Agreement of June 16, 1982, imposed no obligation upon DLJ to compensate the soliciting dealers. Second, DLJ contends that Energy Exchange—the party with the obligation—only had to pay a commission in those instances in which the exchanging party inserted the soliciting dealer's name on a Letter of Acceptance or proxy, fulfilling a condition precedent to payment.[4] Because DLJ's first argument is well taken, the Court does not address the second.

DLJ properly points out that the Soliciting Dealer Agreement between T. Bob and DLJ—the June 16, 1982, agreement previously discussed—imposes no obligation upon DLJ to compensate the soliciting deal-

---

**2.** T. Bob questions whether there can be a change of the earlier agreement absent some additional consideration. While this notion may comport with traditional principles of contract law, it is not the law of New York.

"An agreement, promise or undertaking to change or modify, or to discharge in whole or in part, any contract, obligation, or lease, or any mortgage or other security interest in personal or real property, shall not be invalid because of the absence of consideration, provided that the agreement, promise or undertaking changing, modifying, or discharging such contract, obligation, lease, mortgage, or security interest, shall be in writing and

signed by the party against whom it is sought to enforce the change, modification or discharge, or by his agent."

N.Y.Gen.Oblig.Law, § 5–1103 (McKinney 1978).

**3.** DLJ also argues that the Plaintiff, T. Bob, failed to plead a claim based on the June 16, 1982, agreement. Given the Court's disposition of the matter on other grounds, this particular point is left unaddressed.

**4.** DLJ makes no explanation for why it gratuitously offers this argument on behalf of Energy Exchange.

ers. Rather, DLJ alleges that that responsibility falls upon Energy Exchange. Section 2 of the Agreement supports that allegation.

"The payment of compensation to Soliciting Dealers shall be solely the responsibility of the Company, and the Dealer Manager [DLJ] shall have no obligation or liability to any Soliciting Dealer for the payment of compensation."

Confronted with this straightforward language, T. Bob advances a poorly developed distinction. It argues that it is seeking damages for breach of contract and the amount of the compensation, rather than the compensation itself. As is often said, this is a distinction without a difference. T. Bob is trying to foist a duty upon DLJ that is not derived from the terms of their contract. If someone else had the duty to compensate T. Bob, then DLJ cannot be held responsible for the breach of that duty. T. Bob alleges that DLJ allowed the closing to proceed even though DLJ knew that T. Bob was entitled to compensation. Knowledge of contract terms, however, without a corresponding duty, does not make one liable for breach of a contract.

For the foregoing reasons, the Court will enter summary judgment in favor of the Defendant and against the Plaintiffs on this claim.

## B. *Fraud.*

■ Count Two of the complaint contains an allegation of fraud by all of the Plaintiffs against all of the Defendants. With regard to the allegations against DLJ, this count must fail.

DLJ argues that the Plaintiffs fail to allege any representation made by DLJ in connection with entering into the agreements. The Plaintiffs counter with a vague argument that the representation of compensation was false and that the Plaintiffs detrimentally relied upon the representations by rendering substantial professional services. They may be correct that these allegations standing alone state a claim for fraud, but the facts of record—including those supplied by the Plaintiffs—defeat the allegation as to DLJ.

In his affidavit, Plaintiff Zacharias states that the Plaintiffs became aware of DLJ's involvement in July (actually June) of 1982. Elsewhere in their argument, however, the Plaintiffs assert that they had substantially completed their performance before DLJ came into the picture. Thus, it cannot be said that the Plaintiffs relied upon any representations made by DLJ. By their own admission, the Plaintiffs, in extending their services, could not have relied upon any representations made by DLJ. Hence, their fraud claim against DLJ is fatally flawed.

DLJ offers other valid arguments against the fraud claim advanced by the Plaintiffs. Although the arguments may have application in considering the claims pressed against other Defendants, the Court does not deem it necessary to consider them at this point in regards to DLJ. The Court will enter summary judgment for DLJ on the claim of fraud.

## C. *Unjust Enrichment.*

■ In Count Seven of the complaint T. Bob charges that DLJ was unjustly enriched at T. Bob's expense. The complaint employs the following language:

"Since no compensation was paid to Plaintiff, it is believed and, therefore, averred that its compensation was paid to Energy Exchange or DLJ, or, alternatively, payment was deferred to enable the payment to be consummated, all to the benefit of these defendants."

Complaint, ¶ 76. DLJ counters T. Bob's accusation with the affidavit of John Maher. Maher states that DLJ did not receive any soliciting dealer fees in the exchange involving the Haught Defendants. The Plaintiffs having left this averment uncontradicted, the Court believes it proper to enter summary judgment in favor of the Defendant as to the allegations of unjust enrichment. *See Rule* 56(e), Federal Rules of Civil Procedure.

### D. *Outrage.*

Finally, Plaintiffs charge in Count Four of the complaint that the Defendants, including DLJ, are liable under the tort of "outrage." They contend that the Defendant's conduct was "outrageous in character and extreme in degree as to go beyond all possible bounds of decency." Complaint, ¶ 65. Upon review of the facts of record, the Court cannot agree that this is a case where the newly developed tort of outrage is applicable. Perhaps in realization of the theory's weakness, the Plaintiffs implicitly abandon it in responding to the Defendant's memoranda of law. They do not discuss it at all. Therefore, the Court will enter summary judgment in favor of the Defendant on this theory.

### Conclusion

The Court finds, based upon the above reasoning, that the Defendant is entitled to summary judgment on each of the Plaintiffs' claims. An appropriate order will issue.

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to counsel of record.