Samuel Rabin, J.
In this action involving a contract for the purchase and sale of real property, plaintiff (the original purchaser’s assignee) seeks the following relief in the alternative: specific performance, specific performance with an abatement in the purchase price, or a return of its down payment and damages.
The pertinent facts relating to the sole issue remaining in dispute between the parties (all other issues having been disposed of during the trial) are these: On or about May 9, 1955, plaintiff’s assignor and five of the defendants, through their admittedly authorized agent, defendant Max Suderov, entered into a written contract for the purchase and sale of a large unimproved parcel of real property in this county. Title was to close on or before July 9. The contract contained the following pertinent provisions:
“ IT IS UNDERSTOOD that the purchaser is purchasing all of the property hereinabove described and in the event good title cannot be obtained to all of the property, the purchaser shall be entitled to refund of the purchase price paid hereunder and this Contract shall be cancelled and made null and void.
tt * # *
“ Said premises are sold subject to:
it * * *
“ Covenants and restrictions contained in former deeds of record, provided the erection and maintenance of the building or buildings on the premises does not violate said restrictions, [and] provided same do not prohibit erection of one family or two family dwellings with flat roofs.
am m #
“ * * * This agreement cannot be changed or modified orally. Any change in or modification of this agreement must be in writing and signed by the parties thereto.”
The title search revealed that covenants and restrictions imposed upon 27 lots of the parcel in question by defendant Community Founders, Inc., prohibited the erection of “ any dwelling house or semi-detached dwelling house with a roof of the character and description known as a flat roof.” A copy of the title company’s report was forwarded to the sellers’ attorney on June 21, 1955, and he, in turn, on June 24, 1955, wrote to the title company in pertinent part as follows: “ Relative to the covenants and restrictions by Community Founders, we will have a cancellation of this restriction delivered at the closing of title.”
The title closing was first scheduled for July 14, 1955, but thereafter adjourned without date to be set on three days’ *14 notice after the sellers had obtained the proper release of the restrictions. The closing was finally set down for November 14,1955. On that day there appeared, among others, the plaintiff, by its president, the sellers, by defendant Max Snderov, and their respective attorneys. The sellers advised the plaintiff that they had not obtained a release of the covenants and restrictions. Plaintiff tendered a certified check for the cash balance of the purchase price, but, at the sellers’ request, agreed to adjourn the closing to November 28, 1955, in order to permit them to obtain the release.
On November 28, 1955, the parties again appeared at the office of the sellers’ attorney, but the sellers again failed to produce a release of the covenants and restrictions. In the presence- of all, the sellers’ attorney telephoned one Joseph Klein of defendant Community Founders, Inc., and then announced that the latter wanted $10,000 for a release. This sum, the sellers refused to pay. The sellers did not, nor were they in any position to, tender even such performance as they were unquestionably obligated to make under the contract.
It is indisputable that the sellers knew of the covenants and restrictions before they entered into the contract and that plaintiff did not. It is likewise indisputable that the sellers, through their duly authorized agent, defendant Max Suderov, and through their attorney, persistently attempted to obtain a release of the covenants and restrictions in question and, indeed, believed they had obtained a consent to such release for $1,250, only to learn that the release which Mr. Klein understood defendant, Community Founders, Inc., was to give did not include a release of the restriction prohibiting the construction of the type of homes plaintiff intended to build. The initial demand for a full release was $20,000, but this was later reduced to $10,000.
No fraud on the part of the sellers was alleged or proved; nor was reformation of the original contract sought.
The contract of May 9 was clear on its face. Such being the case, the intention of the parties must be ascertained from what they wrote. (Raleigh Associates v. Henry, 302 N. Y. 467, 473.) "What they wrote was that plaintiff was to take the property subject to covenants and restrictions contained in former deeds of record “ provided same do not prohibit erection of one family or two family dwellings with flat roofs.” The only construction of which that provision is reasonably susceptible is that if said covenants and restrictions did prohibit the construction of “ one family or two family dwellings with flat roofs ”, plaintiff would be justified in refusing to take title to the property— *15 something it would not have been justified in doing but for the inclusion of the noted exception (McCarter v. Crawford, 245 N. Y. 43, 46) — or, if it chose, in taking title subject to the covenants and restrictions (Catholic Foreign Mission Soc. v. Oussani, 215 N. Y. 1, 7-8; Di Leonardo v. Paoline, N. Y. L. J., Oct. 4, 1956, p. 12, col. 1). But nowhere in the provision under discussion, nor in any other provision of the contract, either expressly or impliedly, is there imposed upon the sellers the obligation of obtaining releases of covenants and restrictions contained in deeds of record.
Nor was there an enforcible modification of the contract imposing such obligation upon the sellers. Modification of the contract in question was as subject to the Statute of Frauds as was the original contract itself (see Imperator Realty Co. v. Tull, 228 N. Y. 447, 453, 454 [concurring opinion by Cardozo, J.]); in other words, the modification, too,/, or some note or memorandum thereof, had to be in writing ‘? subscribed by the party to be charged, or by his lawful agent thereunto authorised by writing ” (Real Property Law, § 259 [italics supplied]). The only writing which could possibly be construed as a modification, or as a note or memorandum thereof, was the letter sent by the sellers’ attorney to the title company in which he stated that the sellers would have “ a cancellation of this restriction delivered at the closing of title.” But that letter was signed by the sellers’ attorney, who was not “ thereunto authorized by writing” (Real Property Law, § 259). If it be suggested that authorization may be spelled out by ratification, the short answer is that where such authorization is required to be in writing the ratification must also be written (see 37 C. J. S., Statute of Frauds, § 214, p. 711; 1 Mechem on Agency [2d ed.], § 430, p. 314), although the rule was otherwise when the authority of the agent did not, in the first instance, have to be in writing (see, e.g., Newton v. Bronson, 13 N. Y. 587, 593, decided under Rev. Stat. of N. Y., part II, ch. VII, tit. I, §§ 8, 9; see, also, Real Property Law, § 259, prior to its amdt. by L. 1934, ch. 750; 1 Mechem on Agency [2d ed.], § 429, pp. 313-314).
Further support for a holding that the contract in question was not effectively modified exists. The contract contained a provision that it could not be changed orally, thus bringing into play section 282 of the Beal Property Law, which provides, in subdivision 1, that such an instrument cannot be changed orally or by executory agreement unless the latter “ is in writing and signed by the party against whom enforcement of the change is sought or by his agent ”, and, in subdivision 5, that where an agreement required by the section to be in writing relates to *16 an interest in real property within the meaning of sections 242 and 259 of the Eeal Property Law the agent must he “ thereunto authorized in writing.” No written authority of the sellers’ attorney having been produced, he had no power effectively to modify the original contract between the parties.
Nor can there be spelled out an equitable estoppel against the sellers for the reason that there was no change of position on the part of the plaintiff and, if there was, it was a change plaintiff had, under the circumstances, no right to make. (See 3 Pomeroy on Equity Jurisprudence [5th ed.], § 805, p. 191.) It knew or should have known its rights under the contract, which was plain, and the requirements of the law pertaining to an agent’s authority in this type of case. Even if the sellers acted as they did under the erroneous belief that such was the legal effect of their contract, they cannot be estopped (Shapley v. Abbott, 42 N. Y. 443, 448).
Accordingly, the court is constrained to hold that plaintiff is entitled only to specific performance of the contract with the covenants and restrictions in question unremoved and with no abatement in the purchase price, or to a refund of its down payment, plaintiff’s election to be made in the judgment to be entered hereon. If plaintiff elects to accept title to the property a date for closing of title will be included in the judgment.
Settle judgment.