Charles S. Golden,
Off. Ref. This controversy arises out of a contract whereby the defendants agreed to sell nine parcels of realty to the plaintiff. The contract was entered into November 22, 1955. The parcels are contiguous and each is separately described as to location and dimensions. All the parcels combined also are described as being portions of lots 1570 to 1573, as shown on the “ Map of St. James Park, Third Division, Section B ” and filed in the Suffolk County Clerk’s office.
*737 The contract obligated the seller to provide building permits for each parcel. The title was to be closed under the contract on January 19, 1956, but did not actually close until March 2, 1956, at which time the sellers delivered and the purchaser accepted a deed describing the premises as set forth in the contract. The sellers also delivered a valid building permit for each parcel. The plaintiff paid the cash consideration and delivered his purchase-money mortgage for the balance of the consideration.
The contract provided as follows: “If the Sellers shall be unable to convey a good and marketable title, subject to and in accordance with this agreement, the sole obligation except as specifically hereinafter otherwise provided, of the Sellers shall be to refund the Purchaser’s down payment made hereunder together with the reasonable cost of title examination and survey and upon the making of such refund and reimbursement, this agreement shall wholly cease and neither party shall have any further claim against the other by reason of this agreement and the lien, if any, of the Purchaser against the premises shall wholly cease. The Sellers shall not be required to bring any action or proceeding or otherwise to incur any expense to render the title to the premises marketable. The Purchaser may, nevertheless, accept such title as the Sellers may be able to convey, without reduction of the purchase price or any credit or allowance against the same and without any other liability on the part of the Sellers. The acceptance of a deed by the Purchaser shall be deemed to be a full performance and discharge of every agreement and obligation on the part of the Sellers to be performed pursuant to the provisions of this agreement, except those, if any, which are herein specifically stated to survive the delivery of the deed.”
The plaintiff went into possession but did nothing under the building permits. He paid the interest that became due on the mortgage, until April, 1957, when the plaintiff, buyer under the contract, undertook to sell these parcels just as he acquired them. His proposed purchaser had the title examined and a survey made, from all of which it appeared that the defendants sellers did not own all the property they purported to convey pursuant to the contract aforesaid.
It appears from the proof that the original map of “ St. James Park ” was incorrect in that, according to the measurements set forth on said map, lots 1570 to 1573 should have contained 191,608.04 square feet, whereas they actually, according to the survey, contained only 165,386.66 square feet. The nine parcels described in the contract and deed of the defendants *738 totalled 192,128 square feet. Thus the actual shortage is substantial and material.
The plaintiff recognized his inability to convey all the land he agreed to sell to his buyer and made a suitable arrangement to cancel the contract. The first purchaser (plaintiff here) called on the sellers to return the consideration and take back a deed and the permits. This they refused to do.
This action is brought by the plaintiff for the return of the consideration paid by him on the contract and on the closing of title, upon his returning to the sellers his deed and the building permits for the premises as he received them.
The defendants object to the relief sought herein on two grounds (1) that all complaints and remedies available to the plaintiff were foreclosed by the terms of the contract as above set forth, referring to the result of the acceptance of the deed, and (2) that the plaintiff is now unable to restore the defendants to their original status because he did not exercise his building permits. They claim that since the closing of this title, the zone affecting this property had been changed from “ C ” to “ B ”, whereby the zoning was upgraded so that lots are now required to be 100 feet front, whereas under “ C ”, frontage requirement was only 75 feet.
The second objection was not pleaded in the defendants’ answer, but they deny the allegations of the complaint that the plaintiff has offered to and is able to restore the defendants to their position they had when the contract was entered into. It does not seem necessary that the parties should argue about a matter of record, When this property was put in the “ B ” zone and how long it so remained is a matter of record in a public office.
The testimony seems to indicate that the permits which were delivered with the title recited or were labeled as being in the “ B ” zone. There is no legal evidence that this classification has been changed. However, the matter of the permits is not determinative here.
‘ ‘ The general rule seems to be that where there is a contract for the sale of land, by the terms of which a deed is to be subsequently given, the delivery and acceptance of the deed merges the contract in it, and the contract is superseded by the deed as to such provisions as are covered by the conveyance ”. (Schoonmaker v. Hoyt, 148 N. Y. 425, 429-430.)
There are some exceptions to this rule, such as an intention to the contrary, as shown by the papers of sale. Another can be a material shortage in quantity. (Meck v. Allen Properties. 206 Misc. 251.)
*739 It can be assumed here that the shortage between the land contracted to be sold and the land which the sellers were able to convey is substantial and material.
However what can survive the acceptance of the deed is usually a matter of intention as shown by the contract.
In Siebros Fin. Corp. v. Kirman (232 App. Div. 375, 377) the court held: ‘ ‘ The contract clearly shows that there was no intention on the part of the parties to merge the contract in the deed. A contract for the sale of real estate is merged in the deed only when the latter is intended to be accepted in full performance of the former. * * * (Lambert v. Kruse, 121 Misc. 270.) ”
In the case at bar the' language of the contract as to merger is clear, ample and express, viz., “ The acceptance of a deed by the purchaser shall be deemed to be full performance and discharge of every agreement and obligation on the part of the sellers to be performed pursuant to the provisions of this agreement. ’ ’
This contract further provides that, ‘1 The purchaser may, nevertheless, accept such title as the sellers may be able to convey, without reduction of the purchase price or any credit or allowance against the same and without any other liability on the part of the sellers.”
This put the buyer on notice, among other matters, to satisfy himself as to the character of the sellers ’ title and the quantity of land. The contract also provided that the sellers would reimburse the buyer for the cost of a survey, of which the buyer never availed himself.
As was held in Hamilton Park Builders Corp. v. Rogers (4 Misc 2d 269, 273): “ The parties * # * were dealing at arm’s length, the usual situation of vendor and purchaser. A purchaser is chargeable by implication of every fact affecting the title which would be discovered by an intelligent and reasonable examination of the public records.”
In Lancaster at Fresh Meadow v. Suderov (6 Misc 2d 12, 14) the court said: “ The contract * * * was clear on its face. Such being the case, the intention of the parties must be ascertained from what they wrote.”
What they wrote here was that the sellers were selling whatever they had. The buyer agreed to take whatever they had and if he accepted their deed, he agreed to be precluded from asserting thereafter any and every defect that might turn up. (See, also, Raleigh Associates v. Henry, 302 N. Y. 467.)
It must be concluded here that the parties, by the stipulations of their contract as expressed therein, intended that nothing *740 whatsoever should survive the delivery and acceptance of the deed. To hold otherwise can only lead to the making of a new contract by the court, a result never justified under our system of law.
Judgment is granted in favor of the defendants dismissing plaintiff’s complaint, with costs.
The foregoing constitutes the decision of the court, pursuant to section 440 of the Civil Practice Act.
Settle judgment on notice.