William R. Brennan, Jr., J.
On June 4, 1959, the defendant Whaleneck Realty Corporation (“Whaleneck”) contracted to sell to defendant Samor Properties, Inc. (“ Samor”), certain land at Merrick specifically described in the contract, together with all right, title and interest of the seller, if any, in and to all strips of land adjacent or contiguous to the above-described premises. The property was to be conveyed subject to specified agreements and incumbrances, including a survey, the rights of the United States or any other governmental authority to erect or relocate “ the bulkhead line along the high water mark of Great South Bay”, the “riparian rights of others if any in Cedar Swamp Channel and Great South Bay ”, and the “ rights of others if any in land lying below mean high water mark of Great South Bay and Cedar Swamp Channel.” No title was warranted by Whaleneck to any land lying below the mean high tide lines of Cedar Swamp Channel and Great South Bay as said lines were shown on the survey to which the conveyance was to be subject.
If seller were unable to convey a good and marketable title, its sole obligation was to refund the downpayment plus net costs of title examination, not to exceed $50. The seller was by the contract relieved of the obligation to bring any action or proceeding to render title marketable except that it was required to incur an expense up to $1,000 for this purpose. Purchaser was granted the option to accept such title as the seller could convey but without abatement of price. The contract also required a title to be conveyed such as two named title insurance companies would approve and insure.
The premises were divided on the survey into parcels A and B and the contract afforded the purchaser the option to elect not to take parcel B, in which event there was provision for an adjusted price.
The agreement, as modified in respects not of moment in this litigation, was thereafter assigned by Samor to defendant Harbor Bay Realty Co. (“ Harbor ”). Then, on July 30, 1959, *828 Harbor and the plaintiff Najean Builders, Inc. (“Najean”)» entered into an agreement, whereby Harbor agreed to sell the contract to Najean and further agreed to execute and deliver to Najean at the closing of title an assignment of the contract of June 4, 1959, and of the sum of $45,000 deposited thereunder. Upon said assignment, Najean agreed to assume performance of the contract and to hold Harbor and Samor harmless from liability by reason of any breach by Najean. If Najean were to default in taking title or otherwise, the assignor, Harbor, reserved the right to perform the contract of sale for its own benefit and could retain sums paid as liquidated damages.
If title failed to close under the contract because of the fault of Whaleneck or of Harbor, and if Najean were not in default under the agreement, Harbor and the defendant' Smith guaranteed to return to Najean all sums paid under the agreement.
A notice to admit facts and a response having been served, the following additional matters, which are undisputed, are noted before a consideration of the matters in dispute between the parties.
On or about January 25, 1960, Najean gave unqualified written notice that it would not take title to parcel B because the title company certified title to be entirely defective as to this portion of the property.
On April 15,1960, an adjourned closing date, all of the parties to the action and their attorneys as well as representatives of title companies appeared for closing. Harbor tendered to plaintiff an assignment of the contract of sale of June 4, 1959, as modified, and an instrument whereby Najean assumed performance thereof. Najean rejected the said offer and tender on the ground that Whaleneck failed and refused to offer and tender a marketable title in accordance with the contract, and demanded the return of its downpayment.
Subsequently, the plaintiff commenced an action on April 27, 1960, by service of summons and notice seeking $45,504.40 with interest, which was followed by a complaint served May 24,1960, setting forth three causes of action. The first, directed at all defendants except Smith, seeks specific performance of the contract of sale and the agreement of assignment; the second, directed against the same defendants, seeks the recovery of $45,504.40 after demand on April 15, 1960, on the ground that ■the defendants were unable to perform their agreements because title was and is defective and unmarketable for various reasons which are not challenged. The third cause of action against defendants Harbor and Smith rests on the guarantee of return *829 of the aforesaid sums contained in the agreement between Harbor and the plaintiff.
The defendants now join in a motion for summary judgment dismissing the cause of action for specific performance if the plaintiff in answer to the motion failed to agree to accept a conveyance of the parcel A tract referred to above, or, in the alternative, an order of discontinuance if the plaintiff did agree to take such conveyance, or, an order requiring the plaintiff to accept or reject title to said parcel within a set period; and for an order fixing the bond required to cancel the lis pendens filed to the extent it involves the second and third causes of action.
The opposition rests essentially upon the premise that the defendants are seeking to compel plaintiff to make an election of remedies which it need not do before trial or possibly judgment.
As a matter of law, the plaintiff was justified in insisting upon a conveyance of a title that was both marketable and insurable subject only to the exceptions noted in the contract. (Kopp v. Barnes, 10 A D 2d 532.) The causes of unmarketability asserted by the plaintiff are valid and are also of a character that could not be eliminated by an expenditure of $1,000 by the defendants. Even if this were not true, it is unquestioned that the title companies designated in the contract would not insure title subject to and in accordance with the contract but took exceptions not provided for therein. The plaintiff was not required to establish that title was unmarketable. It is sufficient that it has established that title insurance within the contract limits was unavailable from the designated companies (Kopp v. Barnes, supra, p. 535).
The defendants having moved for summary judgment and it appearing to the court that there are no triable issues of fact, the court may award a proper judgment even in the absence of a formal cross motion (Rules Civ. Prac., rule 113; Cohen v. Cohen, 17 Misc 2d 427, 428).
The plaintiff is entitled to specific performance of the contract, if it so desires, subject to the qualifications the contract imposes, or to a refund of its downpayment. (Lancaster at Fresh Meadow v. Suderov, 6 Misc 2d 12, 16, affd. 5 A D 2d 1015.) If it elects to accept such title to parcel A as the seller is able to convey (a choice which the contract affords), the judgment to be settled hereon will so provide and will fix a date for closing of title accordingly, and will dismiss the second and third causes of action. Otherwise, the judgment will provide for a dismissal of the first cause of action and for judgment in favor of the plaintiff against the defendants Harbor and Smith for *830 $45,000, being the only amount agreed to be repaid under paragraph Fourteenth of the Harbor with Na jean agreement.
The exercise of the option to reject parcel B is binding and if the plaintiff elects to have specific performance, the price adjustment provided by the contract as to both amount and method of payment by virtue of the rejection of parcel B will be made.