27 N.Y.2d 718 (1970)
River View Associates, Appellant,
v.
Sheraton Corporation of America, Respondent.
Court of Appeals of the State of New York.
Argued June 4, 1970.
Decided July 2, 1970.
Irving Parker, Martin S. Wagner and Herbert Berkowitz for appellant.
MacDonald Flinn and Laura Banfield for respondent.
Concur: Chief Judge FULD and Judges BURKE, BERGAN and GIBSON. Judge SCILEPPI dissents and votes to reverse in the following opinion in which Judges BREITEL and JASEN concur.
Order affirmed, with costs.
SCILEPPI, J. (dissenting).
We dissent and vote to reverse.
On July 29, 1964 the plaintiff-landlord entered into a 21-year lease with Inverurie Corporation on the Sheraton Motor Inn in New York City. Thereafter, Inverurie assigned the entire leasehold to the Hudson Sheraton Corporation which is a wholly owned subsidiary of the defendant, Sheraton Corporation of America.
At the time of the assignment, the defendant guaranteed the performance of the tenant's obligations under the lease for the first 12 years. This is an action by the landlord against the guarantor arising out of a disagreement on the amount of "overage rent" payable during the first year of the lease.
Under the terms of the lease, the tenant is obligated to pay an annual "fixed net rent" of $670,000. In addition, the tenant is required to pay the landlord for each lease year 27-½% of tenant's "net profit" in excess of $1,030,000. The relevant sections with respect to this "overage rent" provision are 13.01 and 13.02. They provide in relevant part:
"Section 13.01. If the net profit of Tenant in the operation of the leased premises shall exceed $1,030,000 in any lease year in *720 the initial term * * * Tenant shall pay to Landlord, as additional rent (`Overage Rent') for that lease year, 27-½% of such excess.
"Section 13.02. The words `net profit,' as used in this Article, shall mean the net profit in a given lease year derived from the operation by Tenant of the leased premises, as ascertained through the use of standard accounting practices, as hereinafter defined, but (a) before deducting (i) the fixed net rent and additional rent reserved in this lease for that lease year" (emphasis added).
The entire controversy herein revolves about the phrase "additional rent reserved in this lease".
The landlord argues, and the trial court found, that the "net profit" statement submitted by the defendant indicating $745,000 as the net profit, was more than $725,000 understated by virtue of improper deductions made by the defendant. Accordingly, the trial court found: "Based upon the foregoing, Hudson's net profit is computed to be $1,470,422.37; and the overage rent due, on the basis of 27 ½% of said net profit above $1,030,000, amounts to $121,116.15, for which judgment is hereby given to the plaintiff."
As the trial court stated, its conclusion was reached by "a simple application of a comparatively few sections of the lease". Section 1.01 (subd. [A], par. [iv]) defines additional rent as: "All other sums and charges required to be paid by Tenant under the terms of this lease, which shall constitute, and are sometimes hereinafter referred to as `additional rent.'" Thus, the trial court, accepting the landlord's construction of the lease, found that the sums and charges required to be paid by the tenant under the terms of the lease[1] were items of "additional rent reserved in this lease" and, therefore, could not be deducted in computing the tenant's "net profit".
The defendant argues, however, that the term "additional rent" was never intended to include such charges, for to do so would change "net profit" to "gross revenue" as the base in computing the percentage rent due. The defendant contends, and a majority of the Appellate Division agreed, that the phrase in section 13.02 as to the nondeductability of "additional rent *721 reserved in this lease" was only a provision precluding deduction of "overage rent" in arriving at the amount of overage rent due, i.e., the tenant could not determine its overage rent in the first instance, then deduct that sum from net profit to arrive at a lower base for average rent purposes.[2]
Although the defendant has argued persuasively that to disallow the many deductions herein would render the phrase "net profit" meaningless, we are unable to accept defendant's position, for to allow those deductions under the unambiguous terms of this lease would be tantamount to making a new agreement for the parties. As we stated in Black v. General Wiper Supply Co. (305 N.Y. 386, 394): "It may be that, if the parties were to contract today, they might agree [otherwise] * * * We may not, however, make a new bargain for them. Our function is limited to construction of the agreement that the parties actually made".
It is of singular importance that section 13.02 provides that, standard accounting practices notwithstanding, net profit is to be computed "before deducting (i) the fixed net rent and additional rent reserved in this lease" (emphasis added). Of course, if the parties had used the phrase "additional rent" or "additional rent reserved in this article" then by looking to the intention of the parties, it would be possible to accept the defendant's construction of equating additional rent with the phrase "Overage Rent" found in section 13.01. However, by using "additional rent reserved in this lease", only one reasonable construction arises  "All * * * sums and charges required to be paid by Tenant under the terms of this lease * * * shall constitute * * * `additional rent.'" (§ 1.01, subd. [A], par. [iv]), and thus, under section 13.02, are not to be deducted in computing net profit.
Accordingly, the order of the Appellate Division should be reversed and the judgment of the Supreme Court, New York County, reinstated.
Order affirmed.
NOTES
[1] These charges included real estate taxes ($282,395.35), gross receipts taxes ($9,313.13), water taxes ($6,365.84), insurance ($27,892.55), utility charges ($213,787.63) and licenses ($4,999.30).
[2] The majority of the Appellate Division found, however, that the net profit statement submitted by the defendant was understated by almost $180,000 due to the improper deductions of interest on a leasehold mortgage, a loan from the parent company and certain promotional expenses. When adding these items to net profit, however, the resulting figure is still far less than the $1,030,000 overage base and thus defendant has not cross-appealed from the Appellate Division's determinations as to these items.