OPINION OF THE COURT
David B. Saxe, J.
This summary judgment application requests an interpretation of certain clauses dealing with the procurement of financing contained in the commonly used Blumberg standard contract of sale for a cooperative apartment.
The pertinent facts are these: Samuel and Marilyn Morgenstern are the owners of a cooperative apartment (7E) at 466 Washington Street, New York, New York. On October 23, 1986, the Morgensterns entered into a contract for the sale of their apartment to David and Barbara D’Ambrogio, the plaintiffs in this action. In accordance with paragraph 3, the plaintiffs gave the Morgensterns a $66,000 check as a down payment which was deposited into the account of the escrow agent, Goldman & Rio, the attorneys for the Morgensterns.
The plaintiffs, pursuant to paragraph 21, applied for a cooperative loan commitment from the Republic National Rank of New York (Republic) on November 11, 1986. On November 24, 1986, the plaintiffs received a letter from Republic informing them that their loan application had been declined due to insufficient income. On December 1, 1986, one of the plaintiffs’ attorneys notified the escrow agent that their loan application had been rejected and requested the return of their $66,000 down payment. The request was refused. The plaintiffs have sued to recover their down payment and have moved for summary judgment on their claim. It is their contention that they fully complied with their contractual obligations under the contract of sale and are therefore entitled to the return of their down payment. The defendants’ escrow agents have cross-moved to be relieved of their stakeholder obligation (CPLR 1006 [f]).
The position of the Morgensterns, in opposing the motion for summary judgment, is as follows: (1) that the plaintiffs initially breached the contract of sale by not applying for the loan commitment until November 11, 1986, the date the loan application was signed. Under paragraph 2 IB of the contract of sale, the plaintiffs, it is argued, should have applied for a loan within five days of the contract signing; and, (2) that only 33 days had elapsed when the loan application was denied and that the plaintiffs’ notice to terminate was premature since *645 they were legally bound to make diligent efforts to obtain a mortgage commitment for the full period set forth in the loan commitment clause or 45 days. Having failed to do so, they violated the implied contractual covenant of good faith and were not entitled to a return of their moneys.
The contract provides in paragraph 21A as follows: "The obligations of the Purchaser are subject; (a) to the issuance of a commitment letter by any commercial bank, savings bank, savings and loan association or insurance company doing business in the State of New York to Purchaser, 45 days from the date hereof (a copy of which letter shall be furnished to Seller promptly after receipt thereof), pursuant to which the institution agrees to lend not less than $528,000.00 at a rate of interest not to exceed *% per annum for a term of at least 30 years solely upon the security of a pledge, security interest or assignment of, and/or mortgage on, the shares and the lease, in order to enable Purchaser to consummate the transactions provided herein; *prevailing rate.”
Paragraph 21B states: "Purchaser shall apply for the loan, shall furnish to the institution, within five (5) days of the date hereof, accurate and complete information on Purchaser and members of Purchaser’s family, as required, shall advise Seller of the name and address of the institution to which such application has been made and the date upon which it was made and shall cause to be furnished to the Corporation, for its consideration, as soon as practicable, the agreement proposed to be made by the institution with the Corporation”.
And finally, paragraph 21D states: "Provided that Purchaser shall have fulfilled all of Purchaser’s obligations under B hereof, if the aforementioned commitment letter is not issued by the date provided in subparagraph A (a) hereof, Purchaser shall have the right to terminate this agreement on notice given not more than five (5) days thereafter”.
It is true that the plaintiffs did not apply for a loan commitment within five days of the signing of the contract. But, a delay of several days can hardly be classified as a material breach of the plaintiffs’ obligations requiring them to forfeit their down payment of $66,000. It should be noted that a court will generally try to interpret a contract to avoid leaving its provisions substantially without force and effect (see, Tantleff v Truscelli, 110 AD2d 240). Further, as a matter of practicality, purchasers rarely, if ever, apply for a loan within the five-day period set out in the standard cooperative *646 contract of sale. What usually causes a delay beyond the five-day period is an attempt by the purchaser to investigate and inquire as to the best available interest rates. Both buyer and seller are aware of this practice. If the seller wished to lock the buyer into a mandatory period in which to apply for a loan, that event could have been provided for with specific language to the effect that applications must be submitted within the stated time period the failure of which is a material breach of the contract. That was not the case here. Accordingly, the failure to apply for the loan here within five days of the contract signing was not a material breach of the buyer’s obligation under the contract.
The second contention advanced by the Morgensterns is that the buyers were expected to make continuous and bona fide efforts to obtain a mortgage commitment for the entire 45 days. Here, the sellers point to the relevant portion of paragraph 21D which reads as follows: '[I]f the aforementioned commitment letters is not issued by the date provided for in subparagraph (A) (a) hereof, Purchasers shall have the right to terminate this agreement on notice not more than five (5) thereafter” (emphasis supplied). According to the sellers, this means that the purchasers’ right to terminate does not accrue until after the 45 days has passed without a resulting commitment letter and then, they can terminate on notice within five days. Under this interpretation, the use of the "by” instead of "within” makes the passing of 45 days a condition precedent to plaintiffs’ right to terminate. Accordingly, until the 45 days’ period is over, there is an implied and continued good-faith obligation to obtain a commitment letter.
I think this view is strained and incorrect. The guiding principal of law in this context is that a court will resolve ambiguities in an agreement against the party which drafted the agreement (Jacobson v Sassower, 66 NY2d 991 [1985]). So, if any ambiguity exists as to the obligation of a buyer whose loan application was rejected by one lending institution to continue through the balance of the 45-day period to apply to others it must and will be resolved against the seller who employed these terms. Simply stated, the contract of sale did not require the plaintiffs to submit a second loan application before the 45-day contingency period expired. A fair reading of the contract provision requires the court to accept the notion that once the loan application was turned down by the bank, the plaintiffs were entitled to exercise their right to cancel and have their down payment refunded. If the sellers knew of *647 a particular lending institution that provided favorable rates to a prospective buyer, they could have expressly mandated that an application to such institution or bank was required. If the sellers wanted a rejected buyer to reapply in whatever time was remaining, that event should have been specified in the contract. It was not here. Accordingly, the refusal of the plaintiffs to reapply for a loan during the remainder of the 45-day period was not a breach of the implied covenant of good faith and fair dealing contained in the contract. (Kirke La Shelle Co. v Armstrong Co., 263 NY 79, 87 [1933].)
It has been stated that summary judgment should be granted only where there is no doubt as to the existence of a triable issue of fact (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957]). Here, the defendants have failed to raise any genuine material facts requiring a trial. I find that the plaintiffs substantially complied with the contract of sale.
Therefore, the plaintiffs’ motion for summary judgment is granted in all respects except as to their claim for punitive damages. The defendants’ cross motion is denied except that a decretal paragraph in an order to be settled herein shall provide for payment directly over from the stakeholder to the plaintiffs.