OPINION OF THE COURT
David B. Saxe, J.
This dispute raises important and far-ranging questions in the area of cooperative apartment sales. In all likelihood, it arose as a result of the current "soft” resale market for cooperative apartments. The first question raised is whether the standard loan contingency clause, which makes the purchaser’s obligation to buy subject to obtaining a loan commitment, is satisfied by a loan commitment which is conditioned upon the purchaser’s sale of his current residence. Secondly, when the purchaser’s obligation to buy is made subject to the closing of the loan on a fixed date, is his right to terminate extended to the adjourned date for closing? Third, is the purchaser relieved of responsibility to buy when his inability to close on the loan is due to his failure to sell his current apartment?
The facts are these: on September 3, 1987, plaintiff, as purchaser, and defendant McGarry, as seller, entered into a contract for the sale of McGarry’s cooperative apartment.
On November 16, 1987 a cooperative loan commitment letter was issued by Bankers Federal Savings Bank; a rider to that letter indicates that the loan to the purchaser was approved subject to the bank’s receipt of a contract of sale on the purchaser’s apartment.
The closing, originally scheduled for October 20, 1987, was adjourned to December 15, 1987. Thereafter, an additional 30-day adjournment was arranged pursuant to terms specified in the contract. In a letter dated December 29, 1987 the seller notified the purchaser that he was declaring time of the essence, and that a failure to close on or before February 1, 1988 would be viewed as a default under the contract.
On January 7, 1988 the purchaser notified the seller that since he had been unable to sell his current apartment, he *481 would be unable to close on the loan and therefore declared his intention to terminate the contract; he demanded a return of his down payment that had been placed in escrow. The seller declined, believing that the purchaser had himself breached the contract and consequently forfeited his down payment. The purchaser then sued for the return of the down payment and has now applied for summary judgment. The seller cross-moves for summary judgment dismissing the complaint.
The determination as to which party is entitled to the down payment depends, of course, on whether the purchaser failed to perform his obligations under the contract. "Where the seller has not breached the contract of sale and is ready, willing and able to perform his obligations, the purchaser’s refusal to close gives the seller the right to terminate the contract and retain the downpayment” (1 Holtzschue, New York Practice Guide, Real Estate, Purchase and Sale, § 2.11 [2] [b] [i], at 2-36 [Morris ed]; see, Steinhardt v Baker, 163 NY 410; Cooper v Bosse, 85 AD2d 616, 618; 62 NY Jur, Vendor and Purchaser, § 137). A determination of whether the purchaser breached the contract under consideration requires examination of various provisions of the standard Blumberg "Contract of Sale of Cooperative Apartment” used by the parties, particularly the so-called loan contingency clause contained in subparagraph 21.A. This is not the first time this court has found it necessary to analyze the provisions of a Blumberg contract (see, e.g., D'Ambrogio v Morganstern, 135 Misc 2d 643).
Subsection (a) of the loan contingency clause makes the purchaser’s obligation to buy subject to "issuance of a commitment letter” by a bank or other financial institution. The circumstances of this dispute illustrate the pivotal nature of the loan commitment to a sale of real property and reflects how important it is that the parties clearly understand and define the nature of the commitment or the commitment letter they expect the purchaser to obtain in order for the proposed sale to proceed.
The question presented here is: Did the purchaser obtain the type of commitment called for in this contract? The case of Lieberman v Pettinato (120 AD2d 646) is instructive. There, the parties’ sale contract provided that either party could cancel the contract if a loan commitment was not obtained within 45 days. Pursuant to the purchaser’s loan application, a commitment was offered, conditional upon the purchaser’s *482 payment of a 1% origination fee to the lender. The purchaser refused to pay the fee and failed to secure any other loan within the 45-day period. When the seller attempted to cancel the contract and return the down payment, the purchaser argued that the contract was binding since he had obtained a commitment. The court held that the purchaser, having rejected the bank’s offer of a commitment by failing to pay the origination fee, had failed to secure a commitment and thus the seller was entitled to cancel the contract (120 AD2d 646, 648, supra). Although the opinion does not set forth the entire contract, it would appear that the contract there required a firm or irrevocably secured loan commitment before the parties could be required to go through with the sale and purchase.
In contrast to the contract in Lieberman v Pettinato (supra), here the loan contingency clause did not contemplate an irrevocably secured, unconditional loan commitment. It is important to note that while subparagraph 21.A (a) of the Blumberg contract makes the contractual obligations of the purchaser subject to "issuance of a commitment letter”, sub-paragraph 21.C explicitly recognizes that the commitment letter might contain conditions such as payment of fees or other unspecified requirements; that provision reads: "Purchaser shall accept any commitment letter complying with the terms of subparagrpah A (a) hereof, if issued, shall pay any application, appraisal, commitment or other fees in respect of the loan, and shall comply with the requirements of the commitment letter, other than those relating to the corporation.” (Emphasis supplied.) Thus, the very terms of the contract recognize that a commitment letter might include conditions to the lender’s payment of the committed funds. As long as such conditions or "requirements” are of a type reasonably to be expected by the parties, the conditional commitment letter satisfies the contract (cf., Livoti v Mallon, 81 AD2d 533).
It is only sensible to recognize that a lender will seek to protect itself by ensuring that a prospective purchaser applying for a loan commitment will be financially able to meet his payment obligations if the loan is granted. In most cases, it is reasonable to expect a prospective purchaser who already owns a primary residence to sell it or contract to sell it in order to afford the expenses connected with owning and maintaining a new primary residence; thus, the condition imposed by the bank in this case is foreseeable. Since I find that the bank’s requirement that the applicant sell his pres *483 ent apartment was within the reasonable expectations of the parties, I conclude that the purchaser obtained a commitment letter which satisfies contract subparagraph 21.A.
The next issue to be decided is, when the purchaser attempted to terminate the contract, had his time expired? Subparagraph 21.D of the form contract states that, "if the aforementioned commitment letter is not issued by the date provided for in subparagraph A (a) hereof, Purchaser shall have the right to terminate this, agreement on Notice given not more than five (5) days thereafter, or if the other conditions provided for in subparagraph A hereof are not met, Purchaser shall have the right to terminate this agreement on Notice to Seller, and in either event all sums paid on account of the purchase price shall be returned without delay * * * to Purchaser, and all parties hereto shall be relieved of * * * any further liability hereunder.” Paragraph 9 of a rider to the contract then sets an outside date for cancellation by the purchaser, stating in part that, "If Purchaser fails to exercise such right of termination within said ten day period * * * this contract shall remain in full force and effect, and purchaser shall no longer have the right to terminate this agreement in accordance with paragraph 21.” Here, the attempted termination was not as a result of nonissuance of a commitment letter rendering the first portion of 21.D inapplicable. Any right to terminate the agreement must rely on the failure of "the other conditions provided for in subparagraph A.” Of the "other conditions” mentioned in subparagraph 21.A, the only relevant one is subparagraph 21.A (c), which states that, "The obligations of Purchaser are subject * * * to the closing of the loan on or before the date fixed in paragraph 10 for the closing.” Thus, if the closing of the loan did not occur on or before the date fixed in paragraph 10, the purchaser apparently had the right to terminate the agreement.
Paragraph 10 fixed the closing date at October 20, 1987; however, time was not of the essence here since the terms of the agreement expressly provided for adjournment of the closing date (see, GDJS Corp. v 917 Props., 99 AD2d 998; Lusker v Tannen, 90 AD2d 118, 124) and the seller first declared time of the essence by letter dated December 29, 1987. Where time is not of the essence, both the seller and the purchaser are entitled to a reasonable adjournment beyond the closing date to perform the contract (see, Levine v Sarbello, 112 AD2d 197, 199-200). So, the purchaser’s right to terminate could not have expired merely upon the passing of *484 the originally set closing date. Adjournment of the closing date generally affords the purchaser additional time to secure financing; such adjournment would be incongruous if it were to be granted without a concomitant extension of his right to terminate the contract in case of failure to obtain financing— or, in this case, to satisfy a condition precedent to payment of the committed funds. Here, the fact that the parties provided in the contract for extensive adjournments reflects their recognition that the purchaser might have some difficulty procuring financing. Accordingly, when the closing date was adjourned, the purchaser’s right to terminate for inability to close on the loan must have been extended too. As a result, the 10-day time limit imposed by rider paragraph 9 has no applicability here.
The seller argues that this result is unfair because the purchaser could simply decline to sell his apartment and thereby nullify the contract. However, as at least one commentator has noticed, the provision that the purchaser’s obligations are subject to the closing of the loan "shifts the risk to the seller,” (see, 1 Holtzschue, New York Practice Guide, Real Estate, Purchase and Sale, § 2.29 [2] £j].[i]; § 2.30 [Morris ed]). Holtzschue recommends that if such a provision is included in a sale contract the seller can protect his interests by modifying that clause to include the phrase " 'unless the failure of the loan to close is due to an act or omission of the purchaser’ ” (id.). I would only add that counsel for sellers may protect their clients by providing for a seller’s right to terminate if the purchaser is unable to close on the loan by an outside date, or in the event a "firm” loan commitment is not obtained.
Finally, because the contract provided for another situation in which the purchaser’s right to cancel the contract could be extinguished, I turn briefly to a point not raised by the parties. Paragraph 9 of the rider declares in part that, "[I]f Purchaser shall fail to comply with the conditions set forth in Paragraphs 21 (B) and (C) then * * * this contract shall remain in full force and effect, and Purchaser shall no longer have the right to terminate this agreement in accordance with paragraph 21.” Of the two subparagraphs mentioned above, 21 (C) is relevant here. It provides that, "Purchaser shall accept any commitment letter complying with the terms of subparagraph A (a) hereof, if issued * * * and shall comply with the *485 requirements of the commitment letter other than those relating to the Corporation” (emphasis added).
This provision was clearly intended to attach a good-faith condition to the purchaser’s rights; for instance, if the purchaser failed to follow through with the deal either by not applying for a loan or by not applying for the approval of the co-op’s board of directors, he would not be able to cancel the contract and be reimbursed his down payment. On the other hand, the provision that the purchaser "comply with the requirements of the commitment letter” should not be construed to require this purchaser to either sell his residence regardless of the circumstances, or else find himself in breach of the contract. To interpret the contract otherwise could in essence require the purchaser to sell at a loss or for a distress price; construction producing such a harsh result should be avoided (see, Nassau Ch., Civ. Serv. Employees Assn. v County of Nassau, 77 AD2d 563, affd 54 NY2d 925; River View Assocs. v Sheraton Corp., 33 AD2d 187, affd 27 NY2d 718).
If there were evidence that the purchaser had failed to employ good-faith efforts to sell his apartment, a determination that the purchaser defaulted under the contract would be appropriate (cf., Byrne v Collins, 142 AD2d 661), because even where the contract is not explicitly conditioned on the purchaser’s sale of his apartment, the implied covenant of good faith and fair dealing would require such efforts (see, O’Neil Supply Co. v Petroleum Heat & Power Co., 280 NY 50, 54; Katz v Seville Realty Corp., 138 NYS2d 401). Here, however, there is no indication that the purchaser’s inability to comply with that requirement was due to a failure to make any good-faith attempt. Consequently, the purchaser’s failure to sell his own apartment does not support the seller’s assertion of default.
In conclusion, the purchaser’s inability to close on the loan by the adjourned closing date gave him the right to terminate the agreement and be refunded his down payment. The purchaser is entitled to his $25,250 down payment less the $2,350.71 deducted, in accordance with the agreement, to pay the carrying charges incurred once a 105-day period had passed without closing. The plaintiff’s motion is granted, and the defendant’s cross motion is denied.
The clerk is directed to enter judgment for $22,899.29 with interest.